208 CINEMA, INC. and Philip Steinberg,
Plaintiffs,

v.

Carl A. VERGARI, District Attorney,
Westchester County, and Eric Geldart,
Police Chief of the Village of Port Ches-
ter, New York, Defendants.

69 Civ. 1747.

United States District Court
S. D. New York,

May 5, 1969.

Kunstler & Kunstler, New York City, for plaintiffs, by William M. Kunstler, New York City, of counsel.

Carl A. Vergari, Dist. Atty. of Westchester County, by William H. McKenna, Senior Asst. Dist. Atty., and B. Anthony Morosco, Asst. Dist. Atty., of counsel.

## OPINION

POLLACK, District Judge.

The plaintiffs herein have moved by Order to Show Cause pursuant to Rule 65(a) and (b) of the Federal Rules of Civil Procedure for an order "staying the further arrests and prosecutions of the plaintiff herein until the eventual disposition of this action". This is the only relief requested or to be considered on this motion. See Rule 7(b) Fed.R.Civ.P.[1]

The two plaintiffs in this case operate the Capitol Theatre in Port Chester, New York. This theatre is used primarily for the exhibition of motion pictures for profit and is owned by the corporate plaintiff, 208 Cinema, Inc.

The individual plaintiff Philip Steinberg is the president and principal stockholder of the corporate plaintiff.

The defendants are the District Attorney of Westchester County and the Police Chief of the Village of Port Chester, New York. Both are sued only in their official capacities.

Jurisdiction of the Court over the subject matter according to the complaint is asserted under 42 U.S.C. § 1983, 28 U.S.C. § 1343 (Civil Rights), 28 U.S.C. § 2281 (Three-Judge Court) and 28 U.S.C. §§ 2201 and 2202 (Federal Declaratory Judgment Act). The complaint charges that the Obscenity Law of the State of New York, Penal Law, McKinney's Consol.Laws, c. 40, §§ 235.00 and 235.05, is void on its face, and as applied to the plaintiffs, in that it violates the First, Fifth, Eighth and Fourteenth Amendments to the Constitution.

On April 22, 1969 the individual plaintiff was arrested and immediately brought before the Village Justice Court of Special Sessions, Village of Port Chester, where he was arraigned on an information charging obscenity in violation of Section 235.05 of the New York Penal Law, which reads, in pertinent part, as follows:

A person is guilty of obscenity when, knowing its content and character, he:

1. Promotes, or possesses with intent to promote, any obscene material; or

2. Produces, presents or directs an obscene performance or participates in a portion thereof which is obscene or which contributes to its obscenity.

The arrest resulted from the execution of a search warrant issued by the Honorable George D. Burchell, County Judge of Westchester County, upon the affidavit of William H. McKenna, Senior Assistant District Attorney of Westchester County, after Judge Burchell himself had viewed two films entitled "The Girl from Pussy Cat" and "Professor Lust" and a reel of coming attractions at the theatre. In executing the warrant, law enforcement officers under the supervision of the defendants seized the two films and, in addition thereto, the lenses from both of the theatre's projectors together with advertisements and other papers. Also pursuant to the direction of the warrant, two other films entitled "The King" and "All Women Are Bad" which had been scheduled for showing the following evening, April 23, 1969, were seized, having been among those advertised in the coming attractions viewed.

On April 25, 1969 the reel of film containing the coming attractions referred to was seized pursuant to a search warrant.

On April 25, 1969 the matter was presented to the Westchester County Grand Jury which returned an indictment against the individual plaintiff. This indictment is pending but the filing of it is waiting the disposition of the motion before this Court.

---

1. "(1) An application to the court for an order * * * shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. * * *"

On April 25, 1969 the complaint herein was filed and the plaintiff's attorney, proceeding *ex parte*, presented for signature an order to show cause to bring on a motion for a preliminary injunction containing a provision for a temporary restraint of the defendants pending the hearing of the motion; the restraint sought was against further arrests and prosecutions. The Court struck the requested temporary stay from the order submitted and fixed the return day of the motion for the following Tuesday, April 29, 1969. The Court declined even to consider a temporary stay without notice to the defendants. Thereupon the plaintiffs' attorney undertook to give notice to the defendants or their attorneys to appear in Chambers on the following day on the application for a temporary stay.

The plaintiffs and the defendant District Attorney appeared in Chambers by counsel. Plaintiffs' counsel stated that he was not seeking the return of the films. The Court declined to issue a temporary stay pending the hearing of the motion and directed that any change in the relief requested should be delineated in writing in the motion papers. The defendant objected to receiving mere oral notice of oral claims on plaintiffs' behalf.

On April 29, 1969, the motion was fully argued and decision was reserved. The only additional legal paper filed by the plaintiffs was an affidavit setting forth information to show where and when the films in question had been exhibited in the State of New York and elsewhere in the United States. No expansion of the relief requested was indicated in any supplemental notice of motion.

Plaintiffs have, as yet, made no motion for an order convening a Three-Judge Court under 28 U.S.C. § 2281. Nor do the moving papers request the return to the plaintiffs of the films and lenses seized. Accordingly, the issues that would be raised by such applications are, as a matter of plaintiffs' choice, not before the Court at this time.

Plaintiffs filed a brief indicating that they seek a preliminary injunction which, in addition to enjoining the defendants from further arrests and prosecutions of the individual plaintiff, would enjoin them from continuing with the prosecution now pending. The power of a federal court to issue such an injunction is doubtful. However, this additional request for relief was withdrawn by the moving parties in the course of the oral argument on the motion.

Thus, the only question properly presented to the Court at this time is whether plaintiffs have made the necessary showing for an order staying *further* arrests and prosecutions of the individual plaintiff until the determination of the action commenced by the filing of the complaint herein. The power of this Court to issue such an order is questionable.

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

Any injunction such as had been applied for here would substantially interfere with the prosecution and adjudication of the pending State court proceedings, as is amply demonstrated by the fact that the Grand Jury's indictment has not been filed out of deference to this Court. Cf. Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■■ Just as prosecutors cannot, by an abuse of process, chill the exercise of essential First Amendment rights, Dombrowski v. Pfister, *supra,* so the federal judiciary cannot ordinarily chill the prosecution of *bona fide* State prosecutions.

> § 2283 forbids any federal injunction substantially interfering with the prosecution of a pending state proceeding unless an exception applies. [Citations] The question thus becomes

whether the injunction issued by the district court came within one of the exceptions recognized by the statute.

Studebaker Corp. v. Gittlin, 360 F.2d 692, 696 (2d Cir. 1966).

Plaintiffs have, in both their memoranda and oral argument, relied exclusively on 42 U.S.C. § 1983 as a purported exception to 28 U.S.C. § 2283. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs contend that this statute authorizes an injunction, at least of future arrests and prosecutions of the individual plaintiff for conduct similar to that which brought about the pending prosecution, since the latter violates the First Amendment to the Constitution in that the subject films were not obscene as a matter of law.

■■■ Assuming but not passing upon plaintiffs' legal arguments, in this respect,[2] they do not advance plaintiffs' cause since it has not been shown, with the degree of probability requisite to success on this motion, that the films are not obscene at a matter of law.

■■ Obscenity is defined, for First Amendment purposes, in the following terms:

> [W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.

Roth v. United States, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498 (1957).

Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex, (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.

A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966).

Certainly no showing of the films in question has been made available to this Court. Indeed, plaintiffs argue that it is not necessary to view the films in order to pass upon their lack of obscenity.

■■■ Plaintiffs have cited no case, however, which has held that the displaying of these particular films was protected by the First Amendment. What they attempted to do was to demonstrate that these films were not obscene

---

2. In Studebaker Corp. v. Gittlin, *supra*, the Court of Appeals continued, at 360 F.2d 697:

> A case does not fall within the statutory exception merely because another federal statute permits injunctive relief in general terms. See Baines v. City of Danville, 337 F.2d 579 (4 Cir. 1964), cert. denied, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965) (Civil Rights Act, 42 U.S.C. § 1983).

Thus the Court of Appeals has clearly intimated its preference for the view of "the majority of the circuits" that federal injunctive relief is unavailable to restrain *pending* state prosecutions allegedly violating rights protected by 42 U.S.C. § 1983. *Id.* at 697, n. 4. This Court does not hold, as part of its decision in the instant case, that federal injunctive relief is unavailable to restrain *future* state prosecutions which would allegedly violate the same rights. However, a State court determination of such issues in the first instance seems to be preferred.

by "contemporary community standards", in part, by proving that they have been shown elsewhere in New York and in the United States without arrests, prosecutions, or other restraints. This offer of proof is not persuasive since prosecutorial discretion cannot control a judicial determination, either in this Court or in the State courts.

Also relating to "contemporary community standards", plaintiffs have alluded to decisions protecting or allowing the showing of films which are more uninhibited in displaying nudity and sexual matters than the films in question here. The approval for entry into this country of the subject film in United States v. A Motion Picture Film Entitle "I Am Curious—Yellow", 404 F.2d 196 (2d Cir. 1968), however, does not aid plaintiffs' cause since two of the learned judges on the Bench that decided that case (Friendly, J., who concurred, and Lumbard, Ch. J., who dissented) were of the opinion that the film was offensive to contemporary community standards. Judge Friendly concurred because the film was not wholly without redeeming social value. Nor does approval of the showing of "I, A Woman" serve plaintiffs any better. The affidavit of Mr. McKenna, upon which the first search warrant was issued, indicates that only the "most shocking sexual episodes" of this film were included in the reel of coming attractions. This bit of editorialization may have deleted the very matter which made the actual feature film permissible matter for public display.

■ In sum, there is sufficient question here of the obscenity of these films to warrant that issue being decided in the first instance by the State courts.

However, the plaintiffs have asserted an alternative ground for the injunctive relief they seek. Plaintiffs claim that they are being harassed by a bad faith prosecution against the individual plaintiff, brought solely to discourage the display of non-obscene but "frank" films. They further claim that 42 U.S.C. § 1983 authorizes this Court to enjoin threatened prosecutions in such circumstances.

■ The Supreme Court has ordered that an injunction be issued where the free exercise of First Amendment rights was being chilled by prosecutions not pending at the time the federal action was commenced, as well as by the threat of further prosecutions in the future, all under a state statute which was void on its face for vagueness. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, plaintiffs have, at least for purposes of the present motion, conceded that the relevant state statute is valid on its face, such issue being more properly raised on a motion to convene a Three-Judge Court.[3]

■ On this view of the case, it is readily apparent that abstention may serve a legitimate purpose. The statute regulating speech is not attacked on its face. The only proper attack is launched at the motivation behind the bringing of a prosecution which cannot render the statute unconstitutional as applied because the subject films cannot be said to be non-obscene as a matter of law. Considerations of federalism temper the exercise of equitable power, for the Court has recognized that federal in-

---

3. Indeed, this Court would be hard put to hold that the applicable State statutes depart from the Supreme Court's definition of obscenity as quoted above. The definition of the word "obscene" as used in Section 235.05, under which the individual plaintiff is being prosecuted, is set out in Section 235.00 of the New York Penal Law as follows:

1. "Obscene." Any material or performance is "obscene" if (a) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value. * * *

terference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings. (Footnotes omitted)

Dombrowski v. Pfister, 380 U.S. at 484–485, 85 S.Ct. at 1119–1120.

In *Dombrowski*, it was clear that defense of the state criminal prosecution pending at the time of appeal would not assure adequate vindication of constitutional rights, and, thus, abstention was inappropriate.

We hold the abstention doctrine is inappropriate for cases such as the present one where * * * statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities.

First, appellants have attacked the good faith of the appellees in enforcing the statutes, claiming that they have invoked, and threaten to continue to invoke, criminal process without any hope of ultimate success, but only to discourage appellants' civil rights activities. If these allegations state a claim under the Civil Rights Act, 42 U.S.C. § 1983, as we believe they do, * * * the interpretation ultimately put on the statutes by the state courts is irrelevant. * * * It would not alter the impropriety of appellees' invoking the statute in bad faith to impose continuing harassment in order to discourage appellants' activities, as appellees allegedly are doing and plan to continue to do.

Second, appellants have challenged the statutes as overly broad and vague regulations of expression. * * *

[I]t is readily apparent that abstention serves no legitimate purpose where a statute regulating speech is properly attacked on its face, and where, as here, the conduct charged in the indictments is not within the reach of an acceptable limiting construction * * *.

380 U.S. 489–491, 85 S.Ct. 1122–1123.

It is thus not clear that a claim is stated under section 1983 where, although bad faith is alleged, the federal petitioner is charged in the State court with conduct which is constitutionally indictable.

 Laying aside such questions, however, it is quite apparent, even from the authorities cited by the plaintiffs, that they assume an extremely heavy burden if they hope to prevail on the issue they raise by their attack upon the good faith of state officials. Carmichael v. Allen, 267 F.Supp. 985, 996–997 (N.D. Ga.1967). In this burden they have failed and, for that reason, their motion must be denied.

The plaintiffs' claim of bad faith on the part of the defendants rests on their contentions that: (1) the seizures of films and other materials were illegal, for lack of prior notice and of an adversary hearing on the issue of obscenity; (2) the prosecution has no hope for success on the issue of obscenity since the films have been so widely shown and others like these films have been sustained in the courts; and (3) the raid on plaintiffs' theatre was "politically motivated" as a response to public pressures, as demonstrated by the fact that the members of the press were notified in advance and allowed to accompany the law enforcement officers when the first warrant was executed. Suffice it to say that these contentions fail to indicate a prosecution commenced solely to harass and without regard to eventual success or failure.

Indeed, there is ample evidence that the District Attorney might even have been considered remiss in his duty to conserve the public interest had he not

proceeded with the diligence he has exhibited. At every stage, the prosecuting authorities chose between the options available to them under State laws with respect to the manner of their proceeding in a way calculated to produce the most responsible, fair and non-prejudicial determination and result. Assistant District Attorneys viewed the films in their entirety before applying for any warrant. Before the warrant was issued, both the District Attorney and the County Judge viewed the films. The individual plaintiff was, upon arrest, immediately arraigned. Though he demanded an immediate trial he was given an adjournment to obtain counsel. In order to expedite the administrative problems in such a case as this and to insure a result consonant with sound legal principles, the District Attorney exercised his option to submit the case to the Grand Jury so that trial could be had in the County or Supreme Courts. When the Grand Jury found its indictment, prior to the appearance of the District Attorney in the instant case, the District Attorney refrained from having the Grand Jury file the indictment, although this Court had declined to order a stay pending oral argument.

 Quite apart from the failure of plaintiffs to demonstrate, with a high degree of probability, that they are able to prove defendants' bad faith, and despite the evident validity of the charge of obscenity levied at the films involved here, plaintiffs lack grounds for the extraordinary injunction they seek against further arrests and prosecutions. Such an injunction would intrude not merely upon prosecutorial discretion but also upon the adjudication of a pending State court criminal proceeding. Such an intrusion upon state criminal processes is permissible only "in those exceptional cases" where the injunction is required "to prevent irreparable injury which is clear and imminent" or where the danger of such injury is both great and immediate. Douglas v. City of Jeannette, 319 U.S. 157, 163–164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943). And see Zwickler v.

Koota, 389 U.S. 241, 253, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) ; Dombrowski v. Pfister, 380 U.S. 479, 485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) ; Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951) ; Pugach v. Dollinger, 277 F.2d 739 (2d Cir. 1960), aff'd, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961). Plaintiffs do not meet these tests and this is also sufficient grounds for denying plaintiff's motion for a preliminary injunction. On such a motion, probable success on the merits is one of the considerations for the Court and it has particular importance when there is no clear showing of threat of irreparable injury. Dino De Laurentiis Cinematografica, S. p. A. v. D–150, Inc., 366 F.2d 373 (2d Cir. 1966) ; and see Thompson v. New York Central R. R. Co., 361 F.2d 137 (2d Cir. 1966).

Plaintiffs have, both in their brief and at oral arguments, abandoned their claim that the money damage now being suffered by virtue of the seizures and threatened future arrests and prosecutions are not compensable as against the defendants. Their claim of irreparable injury is based primarily upon their argument that the First Amendment right of free dissemination of ideas is, basically, a right of the recipients of the ideas disseminated, the viewing public here. Cf. Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) ; Snyder v. Bd. of Trustees of Univ. of Illinois, 286 F.Supp. 927 (N.D. Ill.1968).

 Clearly, motion pictures are within the protection of the First Amendment. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). Even assuming that the public has a right to view the pictures here involved, that right is not being irreparably injured by the temporary unavailability of those films in the particular theatre run by the plaintiffs according to their own showing that these pictures are being shown in the area.

Moreover, it is difficult to see how any injunction issued by this Court along the

lines sought by plaintiffs would not, in effect, be a license for the defendant to exhibit any motion picture, regardless of content, free from prosecutions or arrests by the defendants. Such an injunction would, in essence, invalidate the State statute on its face even though plaintiffs haxe expressly disclaimed such invalidity.

Accordingly, plaintiffs' motion is denied. The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

So ordered.