JODBOR CINEMA, LTD., a Body Corporate of the State of New York, Doing business as Fine Art Theater, 663 Main Street, Buffalo, New York, Plaintiff,

v.

Frank A. SEDITA, in his capacity as Mayor of the City of Buffalo, Buffalo, New York

and

Anthony Manguso, in his capacity as City Corporation Counsel for the City of Buffalo, Buffalo, New York

and

Frank M. Felicetta, in his capacity as Commissioner of Police, City of Buffalo, Buffalo, New York

and

Frank V. Spano, in his capacity as Detective Sergeant of the Buffalo City Police and in charge of the Salacious Literature Squad of the Buffalo City Police, Buffalo, New York

and

Michael F. Dillon, in his capacity as District Attorney of the County of Erie, Buffalo, New York, Defendants, Jointly and Severally.

Civ. No. 1969–335.

United States District Court, W. D. New York.

Jan. 23, 1970.

Doyle, Diebold & Bermingham, Buffalo, N. Y. (Vincent E. Doyle, Jr., and Joseph D. Bermingham, Buffalo, N. Y., of counsel), and Robert Eugene Smith, Towson Md., for plaintiff.

Anthony Manguso, Corp. Counsel for the City of Buffalo, Buffalo, N. Y., for defendants Sedita, Manguso, Felicetta & Spano.

Michael F. Dillon, Dist. Atty. of Erie County, Buffalo, N. Y. (M. Dolores Denman, Asst. Dist. Atty., of counsel), for defendant Dillon.

CURTIN, District Judge.

Plaintiff, a New York corporation doing business in Buffalo, New York as the Fine Art Theater, commenced this action against the defendants on September 15, 1969 under the Civil Rights Act (42 U.S.C. § 1983; 28 U.S.C. § 1343) seeking, among other things, a judgment (28 U.S.C. § 2201) declaring Buffalo Charter Provisions, Sections 101 and 102,[1] Buffalo Ordinances, Sections

---

1. In its complaint, plaintiff attacks other sections of the Buffalo Charter as being unconstitutional. Generally, those sections relate to the Mayor's power to hold a license-revocation hearing. However, in its prayer for relief, plaintiff does not seek a ruling regarding the constitutionality of these other sections. And, even if

14 and 21, and New York State General City Law, McKinney's Consol.Laws, c. 21, Section 20, Subdivision 13 [2] unconstitutional as written and/or applied. Also sought is a preliminary and permanent injunction against certain criminal proceedings now pending in Buffalo City Court and Erie County Court, and similar proceedings to be brought in the future. Plaintiff further seeks the return of various materials seized from the Fine Art Theater and $250,000 in damages against the defendants, jointly and severally, for violation of its constitutional rights.

Shortly after the commencement of this lawsuit, the plaintiff sought a temporary order to restrain the Buffalo Police Department, the Corporation Counsel of Buffalo and the Erie County District Attorney from making future searches of the plaintiff's premises, future arrests of persons associated with the plaintiff, and from lodging future charges against the corporation. Plaintiff also sought an order restraining certain pending criminal proceedings based upon violations of both the Buffalo Ordinances and the New York Penal Law.

In an attempt to maintain the status quo at the time of the commencement of this case, the parties agreed to a self-imposed restraint pending the determination of this formal motion for a preliminary injunction. Until the time of this determination, the defendants agreed to adjourn all pending criminal prosecutions in Buffalo City Court and Erie County Court. Officers of the city were not to be prevented from serving daily summonses upon the plaintiff, charging a violation of the ordinance prohibiting the conducting of business at this premise without a license.

Presently, the only plaintiff in this action is the corporation, Jodbor Cinema, Ltd., doing business as the Fine Art Theater. Gerald Attenson and John O'Donnell, both employees of the plaintiff and the individuals charged with violating Section 235.05 [3] of the New York Penal Law, McKinney's Consol. Laws, c. 40, have not been joined as party plaintiffs. The plaintiff has not requested this court to convene a three-judge court for the purpose of granting the preliminary injunction sought. Nor has the plaintiff placed the constitutionality of New York Penal Law Section 235.05 in issue.

On the motion for the preliminary injunction, the parties have submitted to the court extensive briefs of law and various exhibits, one of which is a transcript of the license revocation proceeding held before the Mayor of the City of Buffalo. No testimony was offered by either side during the hearing on this motion for preliminary injunction.

From the plaintiff's complaint, the affidavits opposing the granting of injunctive relief, and all the exhibits introduced at the time of the motion for the preliminary injunction, the court makes the following findings of fact with respect to this motion.

Upon application by the plaintiff, the Director of Licenses of the City of Buffalo, on May 27, 1969, issued Theater License No. 227, Class 6, to the Fine Art

such a ruling were sought, the court has not been impressed with plaintiff's arguments seeking to invalidate these sections.

2. New York State General City Law Section 20, Subdivision 13 provides:
"Subject to the constitution and general laws of this state, every city is empowered:
\* \* \* \* \*
13. To maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the

city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses."

3. Section 235.05 of the New York Penal Law, entitled "Obscenity," provides:
"A person is guilty of obscenity when, knowing its content and character, he:
1. Promotes, or possesses with intent to promote, any obscene material; or
2. Produces, presents or directs an obscene performance or participates in a portion thereof which is obscene or which contributes to its obscenity."

Theater in Buffalo, New York. It is the court's understanding that the license application procedure is rather uncomplicated, consisting primarily of prior approval by a fire inspector and a building inspector. Parenthetically, Buffalo does not have a Board of Censors for motion picture films or a special licensing procedure for theaters.

On July 9, 1969, the defendant, Frank Spano, Detective Sergeant in charge of the Salacious Literature Squad of the Buffalo Police, and Buffalo City Court Judge Theodore S. Kasler went to the Fine Art Theater and, upon payment of a $3.00 admission charge, viewed the film, "Olga's Girls."

On July 11, 1969, Spano swore to an information charging Gerald Attenson, an employee of the plaintiff, with obscenity under Section 235.05 of the Penal Law for exhibiting the film, "Olga's Girls." A warrant of arrest was issued on the same day. On Saturday, July 12, 1969, Attenson was arrested and the film, "Olga's Girls," was seized incident to that arrest. This criminal charge of obscenity is still pending in Buffalo City Court. It should be noted, however, that Attenson, through his attorneys, has applied for removal of this case to Erie County Court.

On July 31, 1969, Spano and Judge Kasler went again to the Fine Art Theater and viewed a movie called "Rio Nudo." Upon an information sworn to that day by Spano, a warrant was issued for the arrest of Attenson, John O'Donnell, and a "John Doe," described as a Negro male projectionist, charging all of them with a violation of Section 235.05 for exhibiting "Rio Nudo." On that same day, Spano, accompanied by other members of the Buffalo Police Department, went to the Fine Art Theater and arrested Attenson. Then, Spano went up to the projection room, told the projectionist that he had a warrant of arrest, and ordered the surrender of the film, "Rio Nudo." The projectionist gave him two reels of film in containers. Then, pursuant to Section 410.00 of the New York Penal Law,[4] Spano directed other members of the Buffalo Police Department to remove two projection arc lamps, two sets of exhaust piping, two top magazines and two bottom magazines from the projection equipment in the theater. Spano gave Attenson a receipt for the projection equipment and "two reels of film entitled 'Rio Nudo.'"

O'Donnell subsequently surrendered himself on the warrant of arrest. The charges against both Attenson and O'Donnell are presently pending in Buffalo City Court. The present state of the record before the court fails to clearly indicate whether or not the defendants have applied to remove these second charges to Erie County Court. The warrant against "John Doe" was never executed.

On August 1, 1969, the plaintiff was served with a notice of a hearing to be held on August 6, 1969 before the defendant, Frank A. Sedita, Mayor of the City of Buffalo, to determine whether or not the plaintiff's license should be revoked for showing obscene films. Beginning on August 6, 1969, a hearing was held before the Mayor, at which Mr. Vincent Doyle and Mr. Joseph Bermingham represented the plaintiff. The Corporation Counsel for the City of Buffalo appeared in support of revoking the plaintiff's license.

During the course of that hearing, eleven witnesses testified, including Spano, Judge Kasler, the Director and Assistant Director of the Department of Licenses for the City of Buffalo, the Clerk of the Buffalo City Court, a regional advertising manager associated with Twentieth Century Fox, and five members of the Buffalo Police Department. During the course of this hear-

---

4. Section 410.00 of the New York Penal Law authorizes "any peace officer of this state" to seize any equipment used in projecting or distributing pornographic still or motion pictures. Further, this section empowers the Corporation Counsel of Buffalo to institute forfeiture proceedings against seized equipment.

ing and at the suggestion of counsel for the plaintiff, the Mayor viewed the motion picture, "Olga's Girls." At this viewing, a showing of "Rio Nudo" had been scheduled. However, it was then discovered that the film delivered to Officer Spano by the projectionist at the time of the July 31 arrest was not the film, "Rio Nudo," but a cartoon. The plaintiff did not offer an explanation about this mixup in films to the court. During the hearing before the Mayor, the film, "Rio Nudo," was not shown.

Counsel for the plaintiff was afforded an opportunity to fully cross-examine the witnesses produced by the City. No witnesses were offered by plaintiff's representatives. Although the Mayor repeatedly insisted that the plaintiff had a full opportunity to produce witnesses in its own behalf, the Mayor declined to sign subpoenas for two witnesses requested by plaintiff's counsel. These proposed witnesses were owners of theater establishments in the Buffalo area who allegedly had shown the picture, "Olga's Girls," previously without criminal charges being lodged or licenses being revoked.

On September 5, 1969, Mayor Sedita issued his detailed decision concluding that "the credible evidence produced at the hearing has established a good and substantial cause justifying the revocation of the theater license of Jodbor Limited, Inc. in that the motion picture or pictures exhibited or promoted are obscene." Effective immediately that day, the Mayor revoked the theater license issued to the Fine Art Theater.

In issuing his decision, the Mayor stated that he found the film obscene under the test of obscenity announced in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and A Book Named "John Cleland's" Memoirs of a Woman of Pleasure v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). Further, the Mayor found facts indicating that the Fine Art Theater was also guilty of "pandering," condemned in Mishkin v. New York, 383

U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), and Ginzberg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966).

The Mayor's decision was made after affording both sides ample time to submit written legal arguments in support of their various positions. In addition to actually viewing "Olga's Girls," the Mayor made his determination of obscenity based on the testimony of Spano and City Judge Kasler, both of whom described what they saw.

The decision of the Mayor was served upon the plaintiff on September 8, 1969.

It is the court's understanding, from the representations of counsel for both sides, that the Fine Art Theater has continued to be open for business throughout the months of July, August and September with perhaps brief interruptions on July 9 and July 31, when the two films in issue were seized. The theater has remained open for business on the advice of counsel since September 8, the date the revocation order was delivered to the plaintiff.

On September 9, Attenson was twice arrested for violation of the Buffalo Ordinances, Section 14, which prohibits conducting business without a license. Several summonses for violating the same ordinance have been served on the plaintiff in the interval between September 9 and the date of the commencement of this lawsuit. Finally, at an early hearing in this court, the Corporation Counsel stated that it was the City's intention to continue to serve such summonses on a day-by-day basis. All of these ordinance violations, the court presumes, are now pending in the City Court of Buffalo.

Except, perhaps, for the brief business interruptions on July 9 and July 31 and the lodging of criminal charges against the plaintiff and its employees, there is no proof that the plaintiff suffered any harm, monetary or otherwise, from July 9 to the present. The theater has remained open for business in spite of the license revocation.

ENJOINING PROSECUTION OF
SECTION 235.05 VIOLATIONS:
PRESENT AND FUTURE

Plaintiff seeks this court to preliminarily enjoin the defendant, Michael Dillon, from further prosecuting the charges *pending* in the City Court of Buffalo against Attenson and O'Donnell for violations of Section 235.05 of the New York Penal Law. It further seeks to enjoin the defendants, Frank Felicetta and Frank Spano, from making any future seizure of the plaintiff's film or any future arrest of the plaintiff's employees unless a prior adversary hearing is held to determine the issue of obscenity.

At the argument, District Attorney Dillon questioned the plaintiff's standing to ask for relief protecting its employees, Attenson and O'Donnell, from present or future prosecution. Whatever merit there may be in this argument, the court finds it unnecessary to pass upon it in view of its disposition as to this portion of plaintiff's request for preliminary relief.

Initially, it is important to recall that the plaintiff has not attacked the constitutionality of Section 235.05 and, in direct response to a specific question asked by this court, has stated that it does not seek the convocation of a three-judge court pursuant to Title 28, United States Code, Sections 2281 and 2284.

Section 2283 of Title 28, United States Code, provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to provide or effectuate its judgments."

Generally, as a matter of comity, federal courts have not issued injunctions to stay *pending* state criminal prosecutions unless one of Section 2283's specific exceptions is applicable. With respect to *future* prosecutions, the United States Supreme Court, in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965), stayed certain state prosecutions *not pending* at the time the federal action was commenced.

In the *Dombrowski* situation, unlike our own, the state prosecutor threatened further prosecutions under a state statute which the Supreme Court found void for vagueness. Because of its finding, the court reasoned that future prosecutions based on this statute could not be taken in good faith, and it reversed a decision of a three-judge court which had denied injunctive relief.

■ Plaintiff's complaint contains bare allegations that the Section 235.05 prosecutions are not being taken in good faith. However, it does not challenge the constitutionality of Section 235.05, the very statute the District Attorney has alleged was violated. Most important is the fact that there is not one shred of evidence at this stage to indicate that the District Attorney is prosecuting the Section 235.05 violations in bad faith. Accordingly, the plaintiff's motion to restrain the Erie County District Attorney from future prosecutions based upon Section 235.05 is denied.

■ In similar fashion, the plaintiff has failed to demonstrate that the defendants, Felicetta and Spano, have acted, or will act, in bad faith. Therefore, the injunction banning future arrests and seizures is denied.

Shortly after its decision in *Dombrowski*, the United States Supreme Court considered the propriety of staying *pending* criminal prosecutions in the face of the apparent bar created by Title 28, United States Code, Section 2283. See Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Because of the lower three-judge court's finding of fact that the prosecutor's bad faith was not established, the Supreme Court found it unnecessary to decide whether or not Section 2283 is a bar to *pending* state criminal prosecutions. To date, the Supreme Court has yet to explicitly interpret the extent of Section 2283's bar to *pending* state criminal

prosecutions.[5] Several Circuits considering this question have split. Compare Baines v. City of Danville, 337 F.2d 579 (4th Cir.1964), cert. denied 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965), and Goss v. Illinois, 312 F.2d 257 (7th Cir.1963) (specifically holding that Section 2283 bars enjoining *pending* state criminal proceedings), with Cooper v. Hutchinson, 184 F.2d 119 (3d Cir.1950), and Sheridan v. Garrison, 415 F.2d 699 (5th Cir.1969) (holding that Section 2283 is no bar).

Plaintiff argues that Title 42, United States Code, Section 1983 expressly authorizes a court of the United States to stay pending state prosecutions in order to protect an individual's constitutionally-protected rights. Section 1983 reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

Plaintiff reasons that Section 1983 is an exception to the injunctive bar imposed by Section 2283.

In Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir.1966), where the Section 2283 bar was discussed, the Second Circuit Court of Appeals cited Baines v. City of Danville, *supra*, with approval, indicating its preference for the view that federal injunctive relief is unavailable to restrain *pending* state prosecutions, notwithstanding the argued exception provided by Title 42, United States Code, Section 1983.

■ Therefore, with respect to *pending* Section 235.05 state criminal prosecutions, the plaintiff's motion for preliminary injunction is denied. In light of this court's finding that there is not a scintilla of evidence indicating District Attorney Dillon or his staff is prosecuting the Section 235.05 violation in bad faith, the court concludes that this is a particularly inappropriate case for a federal court to interfere with the state's good faith administration of its criminal laws. See 208 Cinema, Inc. v. Vergari, 298 F.Supp. 1175 (S.D.N.Y. 1969), and Milky Way Productions, Inc., et al. v. Howard R. Leary, et al., 305 F. Supp. 288 (S.D.N.Y. 1969) (three-judge court).

RETURN OF FILM AND EQUIP-
MENT

■■ The court finds that, prior to the July 9 and the July 31 arrests and seizures, no adversary hearing on the issue of obscenity was held regarding either of the films seized. Such a prior adversary hearing is a constitutional prerequisite to the seizure of allegedly obscene material. Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Potwora v. Dillon, 386 F.2d 74 (2d Cir.1967); and, most recently in our Second Circuit, Bethview Amusement Corp., et al. v. William Cahn, et al., 416 F.2d 410 (2d Cir. 1969). The fact that Judge Kasler viewed the film prior to its seizure and

5. In issuing an order dated December 15, 1969, the Supreme Court considered the propriety of granting injunctions against *pending* state criminal prosecutions. Byrne v. Karalexis, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447. The Court (Mr. Justice Douglas, dissenting) stayed, pending appeal, a temporary injunction against the initiation of new prosecutions of the defendants and the execution of any sentence imposed upon them in the *pending* state case. Mr. Justice Stewart stated his reason for joining the majority of the Court:

"* * * I join the Court's decision to stay the injunction for the reason indicated by Mr. Justice Black—i. e., the general rule that 'requires that federal courts refrain from interfering in pending state criminal prosecutions. * * *'"

found it obscene does not substitute for a prior adversary hearing. Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Bethview Amusement Corp. v. Cahn, *supra*.

■ However, as noted before, the plaintiff has failed to carry its burden that it has suffered damage as a result of these seizures. The theater continued open for business and the plaintiff did not detail any attendance or financial loss.

Furthermore, because of the incidents surrounding the attempted seizure of "Rio Nudo" on July 31 and the apparent role one of plaintiff's employees played in withholding the actual film from the police, the court concludes that there is a likelihood that the film may not be available to the prosecution if this court orders its return to plaintiff now.

Therefore, with respect to the films, "Olga's Girls" and "Rio Nudo," the plaintiff's motion for a preliminary injunction ordering the defendants to return these films is presently denied, with the qualification that plaintiff may renew its motion if the Erie County District Attorney fails to prosecute the Section 235.05 violations within a reasonable time.

■ Plaintiff's motion for a preliminary injunction mandating the return of the projection equipment seized on July 31, 1969 is, in the exercise of discretion, granted. The return of this equipment shall be completed not later than January 29, 1970.

By this decision, the court does not pass upon the obscenity or non-obscenity of the films seized or their admissibility or non-admissibility in evidence in the state criminal prosecution.

ENJOINING PROSECUTION OF BUFFALO ORDINANCE VIOLATIONS: PENDING AND FUTURE

Plaintiff also seeks this court to preliminarily enjoin the defendant, Anthony Manguso, and the defendant, Frank Felicetta, from prosecuting violations of Section 14 of the Buffalo Ordinances against itself or its agents in Buffalo City Court. The motion embraces prosecutions now pending and those to be commenced in the future.

With respect to the prosecutions pending in Buffalo City Court on the date this lawsuit was commenced, the same analysis of Section 2283, as set forth above, applies. Accordingly, plaintiff's motion for a preliminary injunction with respect to those pending prosecutions is denied. See Baines v. City of Danville, *supra*; Studebaker Corp. v. Gittlin, *supra*; and 208 Cinema, Inc. v. Vergari, *supra*.

With respect to future prosecutions based upon Section 14 violations, it is necessary for the court to determine, in light of *Dombrowski*, whether such prosecutions could be maintained in good faith. Section 14 of the Ordinances of the City of Buffalo provides:

"§ 14. Places to be licensed, penalty. No person or corporation, either as owner, lessee, manager, officer or agent, or in any other capacity, shall give, conduct, produce, present or offer for gain or profit, any of the entertainments, exhibitions or performances mentioned or included in any of the sixteen classes, except four and five, specified and defined in the article, at any place in the city, other than within a duly licensed theatre, opera house, hall or other enclosure or place, without a license issued for that purpose, which said license shall be issued by and procured of the director of licenses upon payment of the fee herein prescribed; except that no license fee shall be charged for amateur athletic games. Any person or corporation violating any of the provisions of this section shall be liable to a penalty of not less than ten dollars nor more than two hundred dollars for each offense; and each and every day upon which any such person or corporation shall give, conduct, produce, present or offer any such entertainment, exhibition or performance contrary to or in violation of any provisions of this section shall constitute a separate and distinct offense."

The predicate of a violation under Section 14 is the failure of the violator to be properly licensed under the appropriate Buffalo Ordinances and Charter provisions at the time of the alleged violation. Section 102 of the Charter of the City of Buffalo (1961) provides in pertinent part that the Director of Licenses

> "shall have the power to revoke all licenses issued by him *for cause and after a hearing.* He shall have power to hold hearings to determine the propriety of issuing, renewing or revoking any license."[6] (Emphasis supplied.)

The crucial language in Section 102 is "for cause and after a hearing." No more elaborate guidelines specifically outlining those grounds for revoking a license, by either ordinance or charter provision, have been presented to the court. There is nothing to indicate to the licensing authority or to a licensee what conduct might result in the revocation of a license. A Buffalo Ordinance forbids a licensed exhibitor from showing obscene materials. However, there is no indication that a violation of this obscenity ordinance could result in the revocation of an exhibitor's license to do business.

The United States Supreme Court has declared as unconstitutional laws which restrict the exercise of one's First Amendment freedoms without narrow, objective and definite standards to guide the authority responsible for licensing the exhibition of films. In Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the Supreme Court reversed a Maryland state court conviction for violation of a provision in the Maryland motion picture censorship statute, making it unlawful to exhibit a motion picture without first having obtained a license. In protecting the exhibition of *one* motion picture, the court held the Maryland statute violated the exhibitor's constitutional freedom of expression in these respects: (1) Upon the censor's disapproval of the film, it became the exhibitor's burden to initiate judicial proceedings to persuade the court that the film is protected expression; (2) Once the censor had acted against a film, exhibition was prohibited pending judicial review, however protracted; and (3) No assurance of prompt judicial determination was afforded.

In the instant case, upon the Mayor's finding the films obscene, in order to obtain a review of the Mayor's decision the plaintiff had to institute an Article 78 proceeding (N.Y.CPLR § 7801 et seq.). Although there is no doubt that the theater was allowed to remain open for business pending the Mayor's decision, exhibition was prohibited after it by the penal force of Section 14. The loss of the license and prohibition against use of it continues until a decision favorable to the theater is rendered by the New York Supreme Court in the Article 78 proceeding. The Supreme Court, in Freedman v. Maryland, *supra*, Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), and Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968), required that any judicial review afforded by the state court in licensing or censorship cases be prompt. No assurance was given to this court that such a prompt decision would be given as required.

Moreover, Section 102's language (i. e., "for cause") is "so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability." See Landry v. Daley, 280 F.Supp. 938, 951 (N.D.Ill.1968).

6. At the hearing before the Mayor, attorneys for the plaintiff argued that any license revocation hearing must be held by the Director of Licenses. Therefore, they argue, the Mayor was not empowered to conduct the hearing held in the instant case. For the purpose of this decision, the court will assume that the Mayor, as head of the Executive Department of the City of Buffalo, is empowered to hold such a revocation hearing.

The due process protections required in any "penal" statutory scheme are especially important where rights protected by the First Amendment are involved. This was evidenced again in Interstate Circuit v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968). There the Supreme Court enunciated the well established principle that the absence, in a licensing statute, of narrowly-drawn, reasonable and definite standards for officials to follow is constitutionally fatal. See also Sokolic, dba Coastal Book Mart, Inc. v. Ryan, 304 F. Supp. 213 (S.D.Ga.1969).

Unlike the factual situations in *Freedman, Teitel,* and *Interstate Circuit* where prior restraint was imposed on a single film, the effect of the Mayor's license revocation here is more pervasive because it inhibits, under penalty of a Section 14 violation, the plaintiff from exhibiting any films after the date of the license revocation. This inhibition is without regard to the theme or subject matter of future films to be shown by the plaintiff.

This license revocation required the plaintiff to face at least two practical alternatives: (1) Continue business as usual with revoked license and risk being charged with Section 14 violations; or (2) Discontinue business and lose its entire income. To require plaintiff to face these alternatives as a result of official action based upon an interaction between Section 102 of the Charter and Section 14 of the Ordinances constitutes a violation of the plaintiff's rights under the First and Fourteenth Amendments of the Constitution. The Supreme Court has said that the plaintiff, faced with an unconstitutional licensing law, was entitled to ignore it and continue in business. See Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

Further, because of this declaration of unconstitutionality, the court concludes that future prosecutions based upon these sections cannot be taken in good faith.

The question remains then whether or not this court, sitting as a single judge, can restrain such future prosecutions. Section 2281 of Title 28, United States Code, provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Even though this question is of a serious and substantial nature, it is not necessary to convene a three-judge court under Section 2281 to issue an injunction since Section 14 of the Buffalo Ordinances does not have statewide effect. See Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), and Landry v. Daley, *supra.*

Because of the chronology of events occurring in this case, and most especially because of the agreement between the parties to allow Section 14 violations to be charged against the plaintiff on a daily basis pending this decision, the court concludes that the scope of its injunction, as authorized by *Dombrowski,* shall be to enjoin all Section 14 prosecutions commenced after the filing of this lawsuit.

In making this decision, it should be noted that this court has not viewed either of the films in question. Furthermore, by its action, the court means to attribute no bad faith to the Mayor's conduct in holding a hearing in this case. His attempt to follow the legislative dictates of the Buffalo Common Council by conducting a hearing was

fair and reasonable. The guidelines set by Charter provision gave rise to the constitutional defects here. The court further finds it unnecessary to decide whether or not an administrative license revocation on obscenity grounds is constitutionally possible without a prior *judicially*-superintended adversary hearing.

The court has considered the other sections of the Buffalo Charter, Buffalo Ordinances and laws of the State of New York challenged by the plaintiff here and finds no constitutional infirmity in any of them.

Presently, all the defendants except Dillon have yet to answer or move against the plaintiff's complaint. Stipulations extending the time to answer have been entered into among the parties. Dillon has moved pursuant to Rule 12 to dismiss the cause of action on the ground that the complaint fails to state a claim for which relief can be granted. Alternatively, he seeks an order granting summary judgment in his favor.

Although the complaint here is a rambling hodgepodge of fact statements mixed with conclusions of fact and law, it does contain a bare allegation that the Section 235.05 prosecutions presently pending and those that may be taken in the future are being taken in bad faith. In this decision, the court has found no evidence presently to indicate bad faith on the part of the District Attorney. However, because of the remote possibility that such bad faith may be developed at a trial, the motion to dismiss is presently denied.

### SUMMARY ORDER

In accordance with this court's decision, it is

Ordered that plaintiff's motion to preliminarily enjoin pending and future prosecutions of Section 235.05 violations is denied, and it is further

Ordered that plaintiff's motion to preliminarily enjoin future seizures of the plaintiff's film and future arrests of the plaintiff's employees unless a prior judicially-superintended adversary hearing is held to determine the obscenity issue is denied, and it is further

Ordered that plaintiff's motion for a preliminary injunction mandating the return of the projection equipment seized on July 31, 1969 is granted, and it is further

Ordered that plaintiff's motion for a preliminary injunction mandating the return of "Olga's Girls" and "Rio Nudo" is denied, with the qualification that the plaintiff may renew this motion if the Erie County District Attorney fails to prosecute the Section 235.05 violations within a reasonable time, and it is further

Ordered that plaintiff's motion to preliminarily enjoin Section 14 prosecutions pending in Buffalo City Court before the day this lawsuit was filed is denied, and it is further

Ordered that plaintiff's motion to preliminarily enjoin Section 14 prosecutions commenced in Buffalo City Court on or after the day this lawsuit was filed is granted, and it is further

Ordered that defendant Dillon's Rule 12 motion to dismiss the cause of action for failing to state a claim for which relief can be granted is denied.