**ENTERTAINMENT SYSTEMS, INC., a New York corporation, d/b/a the Capri Art Theatre, and Carl D. Traina, Plaintiffs,**

v.

**Frank A. SEDITA, Individually and in his capacity as Mayor of the City of Buffalo, New York, Samuel C. Sacco, Individually and as Director of Licenses of the City of Buffalo, New York, Frank N. Felicetta, Individually and in his capacity as Commissioner of Police of the City of Buffalo, and Joseph E. DiVincenzo, Individually and in his capacity as Captain in the Police Department of the City of Buffalo, Defendants.**

Civ. No. 1970–452.

United States District Court,
W. D. New York.

Nov. 17, 1970.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y. (Herald Price Fahringer, Jr., and Michael J. Brown, Buffalo, N. Y., of counsel), for plaintiffs.

Anthony Manguso, Corp. Counsel, Buffalo, N. Y. (William Carey, Asst. Corp. Counsel, Buffalo, N. Y., of counsel), for defendants.

CURTIN, District Judge.

The plaintiff, Entertainment Systems, Inc., a New York corporation doing business in Buffalo as The Capri Art Theatre, at 3165 Bailey Avenue, commenced this action against the defendants under the Civil Rights Act (42 U. S.C. § 1983; 28 U.S.C. § 1343) seeking, among other things, a judgment (28 U. S.C. § 2201) declaring the Buffalo Charter provision, Section 102,[1] and Chapter VII, Article 2, Sections 14[2] and 21[3] of the Ordinances of the City of Buffalo unconstitutional. The plaintiffs also request a preliminary and permanent injunction against certain criminal proceedings now pending in the Buffalo City Court against plaintiff, Carl D. Traina, for violation of Section 14 of the Ordinances, operating a theater without a license, and similar proceedings to be brought in the future. Finally, the plaintiffs demand judgment in the sum of $15,000.00 damages for violation of their constitutional rights.

On October 2, 1970, this court issued a temporary restraining order enjoining the prosecution of the plaintiff on these charges and enjoining the institution of any further criminal action against the plaintiffs for failure to have a license until the preliminary injunction application could be heard.

On October 13, 1970, the plaintiffs' application for a preliminary injunction was submitted to the court. No testimony was taken but the minutes of the hearing before Samuel C. Sacco, Director of Licenses of the City, and the proceedings taken in the state court were made part of the record. The court makes the following findings of fact with respect to the application for a preliminary injunction.

In May, 1970, the plaintiff, Entertainment Systems, Inc., took over the operation of a theater located at 3165 Bailey Avenue in the City of Buffalo. A theater had been located at that address for over twenty years and, for about the last ten years, the building housed The Circle Art Theatre which had specialized in the showing of so-called art films of an avant garde nature. Renaming the theater The Capri Art Theatre, the plaintiff, Entertainment Systems, Inc., through its manager, Carl D. Traina, on May 6, 1970 applied for a license to operate a theater pursuant to Chapter VII, Article 2, Section 102 of the Ordinances of the City of Buffalo. Pending disposition of the license application, the Direc-

1. In pertinent part, Section 102 provides that the Director of Licenses
   "shall have the power to revoke all licenses issued by him for cause and after a hearing. He shall have power to hold hearings to determine the propriety of issuing, renewing or revoking any license."

2. Section 14 provides:
   "Places to be licensed, penalty. No person or corporation, either as owner, lessee, manager, officer or agent, or in any other capacity, shall give, conduct, produce, present or offer for gain or profit, any of the entertainments, exhibitions or performances mentioned or included in any of the sixteen classes, except four and five, specified and defined in the article, at any place in the city, other than within a duly licensed theatre, opera house, hall or other enclosure or place, without a license issued for that purpose, which said license shall be issued by and pro-

cured of the director of licenses upon payment of the fee herein prescribed; except that no license fee shall be charged for amateur athletic games. Any person or corporation violating any of the provisions of this section shall be liable to a penalty of not less than ten dollars nor more than two hundred dollars for each offense; and each and every day upon which any such person or corporation shall give, conduct, produce, present or offer any such entertainment, exhibition or performance contrary to or in violation of any provisions of this section shall constitute a separate and distinct offense."

3. In pertinent part, Section 21 provides:
   "Issuance of licenses, expiration. All licenses herein provided for shall be procured from and issued, in his discretion, by the director of licenses; and any such license may be revoked by him."

tor of licenses informally told Mr. Traina that the theater could operate.

On May 13, 1970, when the plaintiff began operations by exhibiting the film, "Without a Stitch," the defendant, Joseph E. DiVincenzo, Buffalo Police precinct captain in that area, told Mr. Traina that he should cease showing the film and threatened to issue a summons for operating the theater without a license. Mr. Traina substituted other films and the theater continued to operate.

On May 20, 1970, by letter, Mr. Sacco informed the plaintiffs that their application to conduct a theater was disapproved by "the Police Department" and suggested that operations cease.

On May 22, 1970, the plaintiffs began an action in a New York State court seeking an order compelling the issuance of a license and enjoining the License Director and Buffalo police from interfering with plaintiffs' business. When plaintiffs continued to operate, the Buffalo City police issued eight summonses in the latter part of May, charging Mr. Traina with operating the theater without a license in violation of Section 14 of the Ordinances of the City of Buffalo. On June 1, the parties agreed that, pending the outcome of the state court action, no further summonses would be served.

On June 26, 1970, the New York State Supreme Court ordered the Director of Licenses to hold a hearing to determine whether or not a license should issue and to make findings of fact stating the reason for his decision. The court further held:

> "The court at this time will not attempt to rule on the constitutional questions until the exact reason or reasons for the denial of license has been determined."

Before the hearing, the parties agreed that the building met the approval of the Fire, Health and Buildings Departments of the City and that the sole issue at the hearing—and the only reason for the failure of the Director of Licenses to issue a license—was the disapproval of the license application by Captain DiVincenzo.

After the hearing of August 20, 1970, the Director of Licenses filed his decision on September 29, 1970, denying the application, finding that the theater would constitute a nuisance in that area, that it was the desire of the residents that the theater not be allowed to operate, and that there were "sufficient number of theaters operating in downtown Buffalo showing this type of film."

Plaintiffs now seek to preliminarily enjoin the defendants from continuing pending Buffalo City Court prosecutions under Section 14 of the Buffalo Ordinances and from initiating similar future prosecutions. Since the considerations differ depending on whether the state court prosecutions have already begun or are merely threatened, the motions will be treated separately.

Title 28, United States Code, Section 2283, which forbids a federal court to stay proceedings in a state court, has been the subject of various interpretations in different circuits. Some courts have held that, in certain circumstances, particularly where First Amendment rights are involved, federal courts should be able to enjoin pending state criminal proceedings despite principles of comity and the apparent bar of Section 2283. See Cooper v. Hutchinson, 184 F.2d 119 (3d Cir. 1950); Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970); and Honey v. Goodman, 432 F.2d 333 (6th Cir., 1970).

Notwithstanding the above authority, decisions in this circuit and in this court have consistently refused to enjoin pending state criminal proceedings. See Engelman v. Cahn, 425 F.2d 954 (2d Cir.), cert. denied, 397 U.S. 1009, 90 S.Ct. 1238, 25 L.Ed.2d 422 (1970); McLucas v. Palmer, 427 F.2d 239 (2d Cir.), cert. denied, 26 L.Ed.2d 808 (1970); and Jodbor Cinema, Ltd. v. Sedita, 309 F.Supp. 868 (W.D.N.Y.1970).

With respect to future prosecutions, however, comity will not always prevail in the face of a need to protect important federal rights. See Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965). Under the *Dombrowski* doctrine, this court has discretion to enjoin threatened state criminal proceedings in order to protect the exercise of First Amendment rights against impairment by a groundless or bad faith prosecution.

In view of prior litigation in this court involving the same ordinance and charter provisions and in the state courts involving similar licensing laws, any future prosecution of plaintiffs would be so palpably unconstitutional as to compel an inference of bad faith. In Jodbor Cinema, Ltd. v. Sedita, *supra*, this court ruled that Section 14 of the Buffalo Ordinances and Section 102 of the Buffalo Charter were a facially unconstitutional licensing scheme. That decision was never appealed. And, in City of Tonawanda v. Tonawanda Theater Corp., 29 App.Div.2d 217, 287 N.Y. S.2d 273 (4th Dept. 1968), Presiding Justice Alger Williams construed a similar licensing ordinance and held it unconstitutional.

In both of the above decisions, it was stated that, where a licensing ordinance affects First Amendment rights, it must be narrowly drawn and must provide definite standards. Without adequate formulae, as Judge Williams noted, a licensing director's "determination could be capricious or whimsical." 29 A.D.2d at 218, 287 N.Y.S.2d at 275. Since the licensing director in this case had no standard to follow, he permitted the disapproval of the precinct captain to control his decision. While it appears that the captain's actions were taken sincerely, there is absolutely nothing in the ordinance or charter which permits such delegation by the licensing director.

First Amendment rights are preferred freedoms in our society. Any restrictions must be narrow, reasonable, and the subject of equal application throughout the community. One indication of the importance of preserving these rights is the recent Supreme Court ruling that a plaintiff faced with an unconstitutional licensing law, as in the present case, is entitled to ignore it and continue in business. See Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

For these reasons, the court is convinced that no prosecution under these sections could be instituted with any hope of ultimate success. Accordingly, plaintiffs' motion to preliminarily enjoin Section 14 prosecutions commenced in Buffalo City Court on or after the date the lawsuit in this court was filed is granted.

So ordered.