410 F.2d 639
 TYRONE, INC., a Virginia corporation, trading as Lee Art
Theatre, and Howard William Burtnett, Appellees,
v.
James B. WILKINSON, Commonwealth's Attorney for the City of
Richmond, Virginia, and Frank S. Duling, Chief of
Police for the City of Richmond,
Virginia, Appellants.
TYRONE, INC., a Virginia corporation, trading as Lee Art
Theatre, and Howard William Burtnett, Appellants,
v.
James B. WILKINSON, Commonwealth's Attorney for the City of
Richmond, Virginia, and Frank S. Duling, Chief of
Police for the City of Richmond,
Virginia, Appellees.
 Nos. 13192, 13193.
 United States Court of Appeals Fourth Circuit.
 Argued March 7, 1969.
Decided May 6, 1969.
 
 James B. Wilkinson, Commonwealth Atty. for the City, Richmond, Va., for appellants and appellees Wilkinson and Duling.
 T. Wilson Hotze, Jr., and Joseph S. Bambacus, Richmond, Va., for appellees and appellants Tyrone, Inc. and Burtnett.
 Before SOBELOFF, WINTER and BUTZNER, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 In October 1968 the defendants, the Commonwealth's Attorney and the Chief of Police for the City of Richmond, seized the film, 'Angelique in Black Leather,' at the Lee Art Theatre, which is operated by the plaintiffs.[1] They had a search warrant secured upon affidavits of four police officers and two lawyers, who, along with the magistrate who issued the warrant, had all viewed the film. Subsequently, the theatre was charged with possessing and exhibiting an obscene movie.[2] The theatre in turn brought this action under 42 U.S.C. 1983, alleging violation of its First, Fourth, and Fourteenth Amendment rights. The sole claim is that the Constitution required an adversary hearing to determine obscenity before the film could be seized. The thrust of the complaint is that the seizure and the threat of its repetition will result in the suppression of nonobscene material. Not at issue, therefore, are the constitutionality of Virginia's obscenity statutes or the obscenity of 'Angelique.'
 
 
 2
 The district court granted an injunction which required the Commonwealth's Attorney to return the film and prohibited the seizure of any other until its obscenity had been determined in an adversary hearing. The court refused, however, to enjoin the prosecution of the theatre in state court. On appeal, the Commonwealth's attorney attacks the injunction, and the theatre seeks to expand it to include a ban on the prosecution. We enforce the injunction as written, except that we will require the theatre to make available a copy of 'Angelique' for the preparation and trial of the criminal cases. Metzger v. Pearcy, 393 F.2d 202, 204 (7th Cir. 1968).
 
 I.
 
 3
 In A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), the Court reversed an order for the destruction of books which had been seized on a search warrant issued by a judge who had made only an ex parte determination of obscenity. The books had been impounded and later condemned as obscene after an adversary hearing. In reversing, four Justices of the Supreme Court found the seizure constitutionally insufficient because there had been no adversary hearing on the issue of obscenity before the books were confiscated.[3] This decision, we believe, is applicable to motion pictures. The First and Fourteenth Amendments protect the expression of ideas through movies, Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952), and the reasons for an adversary hearing before seizure apply as strongly to them as they do to books. The hearing, of course, is not designed to facilitate the display of obscene material, for public obscenity is not constitutionally protected. Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); see Stanley v. Georgia,394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (dictum). On the contrary, as the opinion of the Court in A Quantity of Books makes clear, the purpose of the hearing is to safeguard against governmental suppression of nonobscene expression. With movies, as with books, 'the separation of legitimate from illegitimate speech calls for * * * sensitive tools * * *.' A Quantity of Books v. Kansas, 378 U.S. 205, 212, 84 S.Ct. 1723, 1727, 12 L.Ed.2d 809 (1964), quoting Speiser v. Randell, 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).
 
 
 4
 We find support in Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968), where the Seventh Circuit required a prior adversary hearing in a situation identical to ours in every significant way. The police lacked a search warrant there, but that provides no basis for distinguishing the case because the court focused on the lack of the hearing. Metzger included a requirement, which we find reasonable and also adopt, that the theatre deliver to the Commonwealth's Attorney, upon request, a copy of the movie for reasonable use in the preparation and trial of the charges now pending in the state court.[4]
 
 
 5
 In holding that the Constitution requires an adversary hearing to determine obscenity before seizure of a movie, we do not imply that the hearing must be a fully matured action at law. Matters of comparable importance are often determined on an application for a preliminary injunction, after notice to the adverse party and an opportunity for him to be heard. Cf. Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). An order to show cause why the film should not be seized as obscene presents another possibility. Va.Code Ann. 18.1-236.3 (1960), as amended, (Supp.1968). But in whatever form, the proceedings must be 'designed to focus searchingly on the question of obscenity.' Marcus v. Search Warrants, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).
 
 II.
 
 6
 In assigning cross-error to the district judge's refusal to enjoin the state court prosecutions, the theatre urges that 28 U.S.C. 2283 is not applicable.[5] This statute generally prohibits a federal court from staying proceedings in a state court. Nevertheless, the theatre argues, 42 U.S.C. 1983[6] creates a statutory exception to 2283 for the enforcement of First Amendment rights. We need not pursue this approach to the problem, for it is clear that the application for the injunction lacks equity.[7] Comity dictates denial of federal injunctive relief against state prosecutions that challenge First Amendment rights when it does not appear that the accused have 'been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford (the accused) any protection which they could not secure by prompt trial and appeal pursued to this Court.' Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943); cf. Broyhill v. Morris, 408 F.2d 820 (4th Cir. 1969). On the other hand, suppression of First Amendment rights by bad faith enforcement of a statute unconstitutional on its face or as applied justifies immediate prohibition. Then the chilling effect on the full exercise of First Amendment freedoms results from the prosecution itself. Abatement need not await vindication in the criminal court. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); cf. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). But here the theatre does not challenge either the constitutionality or the application of Virginia statutes forbidding the exhibition of obscene movies. Additionally, the Commonwealth's Attorney, the district judge found, acted in good faith when he decided that under state and federal law the film could be seized for evidentiary purposes without a prior adversary hearing.
 
 
 7
 The theatre's attack upon this finding of good faith fails to establish that it is clearly erroneous. It has not been shown that the prosecutor sought to use the seizure as a covert device for suppression of the film by delaying trial. Nor has the earlier seizure of the projection equipment been repeated. More importantly, the Commonwealth's Attorney applied for a search warrant only after the magistrate had viewed the film. And he justifies this procedure by citing Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), in which the same parties were involved. There the Court, in voiding a search warrant issued upon a single policeman's conclusion of obscenity, observed that it was unnecessary to decide 'whether the justice of the peace should have viewed the motion picture before issuing the warrant.' The Commonwealth's Attorney's interpretation of this remark cannot be equated with bad faith.
 
 
 8
 In sum, we have here good faith enforcement of an obscenity statute and no constitutional challenge to that statute. The district judge properly refused to enjoin the state court prosecutions. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).
 
 III.
 
 9
 The Commonwealth's Attorney argues that under 28 U.S.C. 2281 this case should have been heard by a three-judge district court.[8] The film was seized in accordance with Virginia statutes setting out procedures for the search and seizure of contraband, including obscene material. Va.Code Ann. 19.1-83 to -87 (1960), as amended, (Supp.1968). An attack on the constitutionality of the seizure must therefore, he urges, be an attack on the constitutionality of Virginia's search and seizure statutes. This is true, he says, even though the theatre in its complaint, and consistently thereafter, has carefully limited its attack to the specific seizure, without charging that any Virginia statute is unconstitutional.
 
 
 10
 We conclude, however, that a three-judge court was not required. The theatre does not contest the authority of the Commonwealth's Attorney to seize obscene films. It simply asserts that first there must be an adversary hearing to determine obscenity. Virginia's search and seizure statutes require the judge or justice issuing the warrant to be satisfied that there is reasonable cause for the search. Generally, reasonable cause can be established from an affidavit, but the judge need not accept the affidavit alone, and nothing in the statutes prohibits him from conducting an adversary hearing, as the Constitution requires.[9] When, as here, statutes would be constitutionally applied if administered properly, a single judge has jurisdiction. Cf. Chester v. Kinnamon, 276 F.Supp. 717 (D.Md.1967).
 
 
 11
 In Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), Mr. Justice Frankfurter, holding a three-judge court unnecessary in an analogous situation, wrote:
 
 
 12
 'The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. This was the aim of Congress and this is the reconciling principle of the cases. 'Some constitutional or statutory provision is the ultimate source of all actions by state officials. But an attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority even though a misreading of the statute is invoked as justification. At least not within the congressional scheme of (28 U.S.C. 2281). It is significant that the United States in its complaint did not charge the enabling acts of Oklahoma with unconstitutionality, but assailed merely the Governor's action as exceeding the bounds of law. In other words, it seeks a restraint not of a statute but of an executive action. But the enforcement of a 'statute', within the meaning of (28 U.S.C. 2281), is not sought to be enjoined merely because a state official seeks shelter under it by way of defense against a charge of lawlessness.'
 
 
 13
 No. 13,192 is remanded to permit the district court to amend its injunction to make the film reasonably available to the Commonwealth's Attorney. In all other respects, the judgment is affirmed.
 
 
 14
 No. 13,193 is affirmed.
 
 
 
 [1]
 Tyrone, Inc., is the lessee of the theatre. Howard William Burtnett is its manager. For convenience the plaintiffs will be referred to as the theatre. Generally the defendants will be referred to as the Commonwealth's Attorney. The police also seized previews or fliers of another film
 
 
 [2]
 The prosecution was initiated under Virginia's obscenity statutes. Va.Code Ann. 18.1-227 to -236.4 (1960). Three times previously Lee Art films have been seized and convictions obtained. The first conviction, based on a seizure in March 1966, was overturned by the United Stated Supreme Court in Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968). Another conviction, based on an August 1966 seizure, was not appealed. And a third, which followed a seizure in October 1966, is on writ of error to the Supreme Court of Appeals of Virginia. In October 1966 the police also seized, but later returned, Lee Art's projection equipment
 
 
 [3]
 Mr. Justice Brennan wrote the opinion of the Court in which the Chief Justice, Mr. Justice White, and Mr. Justice Goldberg joined. Mr. Justice Black and Mr. Justice Douglas concurred because, on the basis of views they had previously expressed, the Kansas statute authorizing the destruction of the books violated the First and Fourteenth Amendments. Mr. Justice Stewart concurred on the ground that the books were not hard-core pornography. Mr. Justice Harlan and Mr. Justice Clark dissented because in their view Kansas could find the books obscene and seize them without an adversary hearing
 
 
 [4]
 We express, however, no opinion on the film's admissibility in evidence
 
 
 [5]
 28 U.S.C. 2283 provides:
 'A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'
 
 
 [6]
 42 U.S.C. 1983 provides:
 'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'
 
 
 [7]
 The Supreme Court has expressly left open the question whether suits under 42 U.S.C. 1983 constitute an exception to 28 U.S.C. 2283. Cameron v. Johnson, 390 U.S. 611, 613 n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). We have held that they do not. baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964), cert. denied, Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965). Accord, Goss v. Illinois, 312 F.2d 257 (7th Cir. 1963); Sexton v. Barry, 233 F.2d 220 (6th Cir. 1956). Contra, Cooper v. Hutchinson, 184 F.2d 119 (3d Cir. 1950); Landry v. Daley, 288 F.Supp. 200 (N.D.Ill.1968). See also, ALI Study of the Division of Jurisdiction between State and Federal Courts 1372(7) (Tent.Draft No. 6, 1968)
 
 
 [8]
 Title 28 U.S.C. 2281 provides:
 'An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.'
 
 
 [9]
 Virginia also has established procedures-- not used here-- to provide an adversary hearing before seizure of motion picture films. Va.Code Ann. 18.1-236.3 (1960), as amended, Va.Code Ann. 18.1-236.4 (Supp.1968)