**DEMICH, INC., et al., Plaintiffs-Appellees,**

v.

**John J. FERDON, Thomas Cahill, Alan Nelder, Edward J. Nevin, Defendants-Appellants.**

**Alex DeRENZY, Plaintiff-Appellee,**

v.

**Thomas CAHILL et al., Defendants-Appellants,**

**The People of the State of California, Intervening-Defendant-Appellant.**

**Les A. NATALI, Plaintiff-Appellee,**

v.

**The MUNICIPAL COURT OF the CITY AND COUNTY OF SAN FRANCISCO et al., Defendants-Appellants.**

Nos. 24959, 24960, 24961 and 24976.

United States Court of Appeals, Ninth Circuit.

May 13, 1970.

---

Clifford K. Thompson (argued), Deputy Atty. Gen., Thomas C. Lynch, Cal. Atty. Gen., Thomas M. O'Connor, John Jay Ferdon, Jerome T. Benson, San Francisco, Cal., for appellants.

Carter Stroud (argued), of C. Ray Robinson, Merced, Cal., Kenneth C. Zwer-in (argued), Michael Kennedy (argued), San Francisco, Cal., for appellees.

Paul N. Halvonik, ACLU, Jerome B. Falk, Jr., San Francisco, Cal., amicus curiae.

Before MERRILL, ELY and CARTER, Circuit Judges.

MERRILL, Circuit Judge:

Plaintiffs-Appellees are proprietors of motion-picture houses in San Francisco. Each has brought suit under 42 U.S.C. § 1983 charging appellants with having wrongfully seized allegedly obscene films that had been exhibited by appellees to their theater patrons. In each case the seizure was pursuant to a search warrant,[1] issued *ex parte* on a showing that the movies were in violation of California laws respecting obscene material. Cal.Penal Code §§ 311, 313. Criminal proceedings have been instituted against appellees for such violations. In their suits brought in federal court appellees sought return of the seized films, injunctions against criminal prosecutions founded on the films in question, and an injunction against future seizures not preceded by an adversary hearing upon the issue of obscenity. In each case the District Court denied the injunctions against criminal prosecution,[2] but directed return of the seized film and enjoined any further seizure of film without a prior adversary hearing.[3] These appeals followed.

---

1. In *Natali,* the seizure was not expressly made in reliance on the search warrant, but we find it unnecessary to consider the legal consequences of this fact.

2. This court, with appellants' acquiescence, has stayed pending criminal proceedings. We did so upon the assumption that the propriety of use of the film as evidence in pending criminal proceedings was here in issue. We were mistaken. That question is not yet before us. Should it arise abstention may well be in order. *See* Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

3. Appellants make two challenges to the jurisdiction of the District Court. Neither has merit. First, the convening of a three-judge court was unnecessary; no state statute is being challenged as unconstitutional. *See* Tyrone, Inc. v. Wilkinson, 410 F.2d 639, 643 (4th Cir.), cert. denied, 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1969); *cf.* Phillips v. United States, 312 U.S. 246, 248–253, 61 S.Ct. 480, 85 L.Ed. 800 (1941) (Frankfurter, J.). Second, the prohibition of 28 U.S.C. § 2283 against federal court injunction of state court proceedings is inapplicable because the district judge expressly refrained from enjoining the criminal prosecution of appellees.

Although there is no jurisdictional problem, abstention would be appropriate if there were "special circumstances" indicating the desirability of deferring to state decision. Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d

■■ Our concern is with the guarantee of freedom of speech and press embodied in the First Amendment. It is clear that this guarantee does not extend to obscenity, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and that obscene utterances and materials, properly defined, may be the subject of state regulation or suppression. The constitutionality of California's laws respecting obscenity is not here in question.

It is also clear, however, that the First Amendment poses problems respecting the seizure of allegedly obscene materials not present in the seizure of other forms of contraband or evidence of crime. Procedures "designed to focus searchingly on the question of obscenity" must be provided to avoid suppression of constitutionally protected publications or the interruption of their dissemination. Marcus v. Search Warrant, 367 U.S. 717, 732, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968).

In A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), a case involving a massive seizure of books held for distribution by sale, the Supreme Court held that the *ex parte* securing of the

search warrant did not "focus searchingly on the question of obscenity" and that seizure of the allegedly obscene material was unconstitutional since no adversary hearing upon the issue of obscenity had been held prior to the seizure. The question here presented is whether the rule of *Books* should apply in the case of seizure of a single copy of film held for exhibition to theater patrons. The District Court held that it did. The same problem has been presented to courts of appeals in three circuits. All have ruled, upon the authority of *Books*, (as has a fourth by dicta) that under the First and Fourteenth Amendments a prior adversary hearing must be afforded before allegedly obscene film held for exhibition can constitutionally be seized.[4] To the same effect are many holdings of the district courts.[5]

■ We agree. We find no merit in appellants' effort to distinguish *Books* on the ground that seizure of a single film is not "massive." Where First Amendment rights are exercised by distribution and sale of materials, the proportions of the seizure may well bear on the question whether it constituted restraint. Here, however, the rights are exercised not by sale but by exhibition, and restraint clearly follows from seizure of the materials to be exhibited or of the means of exhibition.[6]

444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, as we discuss later, an intermediate California appellate court has already ruled that films may be seized without a prior adversary hearing, People v. De Renzy, 275 A.C.A. 419, 79 Cal.Rptr. 777 (1969), and it is thus clear that nothing is to be gained by abstention.

4. Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir.), cert. denied, 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410, 411 (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); *See* Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3d Cir. 1969).

5. Delta Book Dist. Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969) (3-judge

court); Fontaine v. Dial, 303 F.Supp. 436 (W.D.Tex.1969) (3-judge court); Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968) (3-judge court); Morrison v. Wilson, 307 F.Supp. 196 (N.D.Fla.1969) (3-judge court); Cambist Films, Inc. v. Illinois, 292 F.Supp. 185 (N.D.Ill.1968); Overstock Book Co. v. Barry, 305 F.Supp. 842 (E.D.N.Y.1969).

6. United States v. Wild, 422 F.2d 34 (Oct. 29, 1969), aff'd. on rehearing (2d Cir. Feb. 2, 1970), where the contrary result obtained, involved seizure of an undetermined number of colored slides, apparently held for distribution rather than for exhibition. Since there was no showing that the seizure was massive, the court, among other grounds, distinguished its holding in Bethview Amusement Corp. v. Cahn, *supra.*

Appellants are troubled by problems of procedure. They point to the fact that a state court of appeal has reached a contrary result. In People v. De Renzy, 275 A.C.A. 419, 79 Cal.Rptr. 777, 779 (1969), it is stated:

"If the rule argued for by De Renzy be the law, then California's law enforcement authorities, under circumstances as here exist, are faced with a curious dilemma. They are permitted by the state and federal Constitutions, and directed by statute, to enforce the state's obscenity laws. On the other hand they may not seize alleged obscene material, even under a search warrant, without a prior adversary proceeding. Any court process designed to compel production of the questioned material would obviously impinge upon the possessor's Fifth Amendment rights. (See Boyd v. United States, 116 U.S. 616, 634–635, 6 S.Ct. 524, 29 L.Ed. 746.) Thus, although seizure of obscene material is conditioned upon a prior adversary hearing, the state would be without power to produce the evidence essential to that hearing. This result is unreasonable and should be avoided."

In our view appellants' fears (and those of the court of appeal) are groundless. So far as the *Fourth* Amendment is concerned, probable cause can be shown as it always has been shown—*ex parte* and, without recourse to the film itself, by a showing of obscenity through use of affidavits, testimony, or still photographs, such as was made here. All that *Books* requires in deference to the *First* Amendment is that before seizure a prior adversary hearing be afforded. Should the film exhibitors, on hearing, choose not to produce the film to rebut the showing of probable cause and should an order for seizure follow they would have waived any right to complain that the magistrate had failed to consider the film as a whole. Should the film exhibitors choose not to avail themselves of the opportunity afforded them for a hearing, they would effectively have waived their First Amendment rights and execution of a warrant for seizure forthwith would be entirely proper.

Appellants' fears that delay in seizure would make possible destruction or disposition of the film or tampering with it can be met by protective orders of the magistrate subject to the sanction of contempt. Bethview Amusement Corp. v. Cahn, 416 F.2d 410, (2d Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 929 (1970).

■ We conclude that the District Court was correct in ordering return of the seized film. We see no need at this time, however, to continue an injunction against future seizures. Acquiescence with our decision can, we feel, be assumed until the contrary appears.

The order for return of the seized film is affirmed. The case is remanded with instructions that the injunction against future seizures be vacated. The stay heretofore issued by this court (see footnote 2) is vacated.

JAMES M. CARTER, Circuit Judge:

I respectfully dissent. I am of the opinion that People v. DeRenzy, 275 A. C.A. 419, 79 Cal.Rptr. 777 (1969), rehearing denied; hearing by Supreme Court of California denied Sept. 24, 1969, properly and adequately disposed of the issue, and we should follow *De-Renzy* and reverse.

The prosecution of cases involving obscenity is essentially a state problem. State judges like federal judges are familiar with the provisions of the United States Constitution and must enforce them where applicable.

Metzger v. Pearcy (7 Cir. 1968) 393 F. 2d 202, Tyrone Inc. v. Wilkinson (4 Cir. 1969) 410 F.2d 639, cert. denied 396 U. S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449

(1969) and Bethview Amusement Corp. v. Cahn (2 Cir. 1969) 416 F.2d 410, cert. denied 397 U.S. 920, 90 S.Ct. 929 (Feb. 24, 1970) have each condemned a seizure of a film without a prior adversary hearing. But each of the cases have inconsistencies which largely destroy the efficacy of the decisions.

(1) Each court directly or impliedly provided the exhibitor must furnish the prosecutor with a copy of the film seized for the purpose of a prosecution, although the original seizure was disapproved.

(2) No satisfactory answer is supplied to the proposition that the defendant may stand on his Fifth Amendment right against incrimination and refuse to deliver the film.

(3) Although the decisions purport to say that the seizure takes from the public the right to view matters which may be within the protection of the First Amendment, by the same token the subsequent delivery of the film for the purpose of the prosecution will tie up the film and rob the public of its right to view matters which may be within the protection of the First Amendment.

(4) Nor do the cases afford any protection against the mutilation or excision of the film before it is turned back to the possession of the prosecution. There is a showing in the record, Natali v. Municipal Court, City and County of San Francisco, et al., No. 24,976, one of the consolidated cases, that the plaintiff Natali, admitted deleting portions of the film between the time it was seen by the officer and the time it was seized by the same officer. An affidavit by the officer stated that Natali deleted the most objectionable portions of the film.

Until the United States Supreme Court authoritatively decides the issue of seizure and use of a film for the purpose of a criminal prosecution, I would follow the California state decision.