ERWIN GLASS, PETITIONER, v. EIGHTH JUDICIAL DISTRICT COURT, RESPONDENT.

No. 6303

July 2, 1971                              486 P.2d 1180

*Wiener, Goldwater & Galatz,* of Las Vegas, for Petitioner.

*Robert List,* Attorney General, *Roy A. Woofter,* District Attorney, and *John D. O'Brien,* Special Deputy District Attorney, Clark County, for Respondent.

---

## OPINION

By the Court, THOMPSON, J.:

This original proceeding in certiorari tests the constitutionality of NRS 201.250 which, among other matters, makes it a misdemeanor knowingly to distribute or exhibit any obscene item. This remedy is appropriate to challenge the constitutionality of an ordinance or statute. NRS 34.020(3); City of Reno v. District Court, 83 Nev. 201, 427 P.2d 4 (1967).

It is the petitioner's contention that the criminal portions of our obscenity law are constitutionally inadequate since no provision is made for an adversary hearing on the issue of obscenity before the criminal procedures are invoked. The petitioner is the proprietor of a motion picture house and was charged with exhibiting allegedly obscene films entitled, "The Muthers," and "Wanda, the Sadistic Hypnotist." A search warrant was issued ex parte by a magistrate on the basis of an affidavit of a criminal investigator who had viewed each film the preceding day, and the films were seized. The investigator's affidavit recited his personal impressions of the films. The complaints were dismissed in the justice court on the ground that the seizure of the films was unconstitutional since there had not been a prior adversary hearing on the issue of obscenity. The district court reversed those dismissals and this independent certiorari proceeding was then instituted. We are not called upon to decide whether the films are in fact obscene.

1.   It is settled that obscenity does not enjoy constitutional protection. Roth v. United States, 354 U.S. 476 (1957). It is equally clear that motion pictures are within the ambit of the constitutional guarantee of freedom of speech and of the press. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (1952); Kingsley Pictures Corp. v. Regents, 360 U.S. 684 (1959); Jacobellis v. Ohio, 378 U.S. 184 (1964). Consequently, appropriate deference to the First Amendment is required since the public has the right to receive nonobscene materials. It is for this reason that a hearing designed to "focus searchingly on the issue of obscenity" must occur prior to seizure. A Quantity of Books v. Kansas, 378 U.S. 205 (1964); Lee Art Theatre v. Virginia, 392 U.S. 636 (1968); Marcus v. Search Warrant, 367 U.S. 717 (1961); Demich, Inc. v. Ferdon, 426 F.2d 643 (9 Cir. 1970), reversed on other grounds; Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3 Cir. 1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2 Cir. 1969); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4 Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7 Cir. 1968). "The separation of legitimate from illegitimate speech calls for . . . sensitive tools. . . ." A Quantity of Books v. Kansas, at 212. The ex parte affidavit of a law officer stating what he viewed is not sufficient (Demich, Inc. v. Ferdon, supra; Cambist Films, Inc. v. Duggan, supra; Bethview Amusement Corp. v. Cahn, supra; Tyrone, Inc. v. Wilkinson, supra; Lee Art Theatre v. Virginia, supra), nor is it enough for the magistrate to view the film prior to seizure. Demich, Inc. v. Ferdon, supra, Tyrone, Inc. v. Wilkinson, supra.

We regard it as settled that the First and Fourteenth Amendments require that there be an adversary judicial hearing and determination of obscenity before a warrant may be issued to search and seize the single copies of allegedly obscene films.[1] Compliance with the proscriptions of the Fourth Amendment is not sufficient. Although it is suggested that such a hearing is not required absent a "massive" seizure as in Marcus v. Search Warrant, supra, and A Quantity of Books v. Kansas, supra, it is evident to us that the restraint following the seizure in this case may have been as serious in its consequences as the

---

[1]A 1965 amendment, NRS 201.250(4) does provide for an adversary hearing through the use of the civil injunctive process. This part of our statute was borrowed from Arizona, A.R.S. 13–535, and has been declared constitutional by the intermediate appellate court of that state. City of Phoenix v. Fine, 420 P.2d 26 (C.App.Ariz. 1966).

restraint following a massive seizure of one's books held for distribution and sale. Where one's First Amendment rights are exercised by exhibition, restraint clearly follows from seizure of the film to be exhibited. Demich, Inc. v. Ferdon, supra; Bethview Amusement Corp. v. Cahn, supra. We express no opinion upon the need for such an adversary hearing in situations other than the one before us.

2. We are not aware of any case holding that a criminal obscenity statute must contain a provision for such an adversary hearing in order to successfully withstand constitutional challenge. The adversary hearing requirement is directed solely to the validity of a seizure and has no bearing upon how a criminal statute is to be structured. Certiorari, although available to test the constitutionality of a statute, is not available to decide a question of the admissibility of evidence. Evidence obtained in violation of constitutional requirements may be suppressed. NRS 179.085; Cook v. State, 85 Nev. 692, 462 P.2d 523 (1969). This is an adequate legal remedy. Accordingly, we dismiss this petition for certiorari. The order of the district court, to the extent that it remanded the cases to the justice court for trial, shall stand. The matter of the admissibility of the seized films will there be resolved in line with this opinion if the prosecutor elects to proceed further.[2]

ZENOFF, C. J., and GUNDERSON, J., concur.

MOWBRAY, J., dissenting:

Respectfully, I dissent.

This original certiorari proceeding challenges the ruling of the district judge that ordered the petitioner, Erwin Glass, to stand trial on two criminal misdemeanor complaints charging Glass with violations of NRS 201.250 (exhibition of obscene motion pictures). The complaints were dismissed by a justice of the peace of the Las Vegas Justice Court on the ground that the seizure of the films by an investigator from the district attorney's office in Clark County was in derogation of Glass's constitutional rights because there had been no prior adversary

---

[2]Criminal prosecutions for obscenity are not frustrated by this opinion. A seizure of the allegedly obscene film is not essential in order to prove a case. Other procedures are available as noted in Demich, Inc. v. Ferdon, supra; Bethview Amusement Corp. v. Cahn, supra; and United Artists Theatre Circuit, Inc. v. Thompson, 316 F.Supp. 815 (W.D. Ark. 1970). See also comments at 46 New York Univ. L.R. 80 and 15 South Dakota L.R. 399.

hearing on the issue of obscenity before the films were seized. From that ruling the State appealed to the district court and won a reversal of the justice court's order. Glass is now before us on a writ of certiorari seeking review of the order of the district court. I would affirm the order of the district judge, and I would remand the case for trial in accordance with the order of the lower court.

On December 29, 1969, an investigator from the Clark County District Attorney's office read advertisements in two Las Vegas newspapers regarding the showing of two films in downtown Las Vegas: " 'WANDA (THE HYPNOTIST)'— LASHED INTO SUBMISSION!—FOR MATURE ADULTS ONLY" and " 'TITLE WITHHELD' ['The Muthers']—ONLY FOR THE MATURE ADULT WHO UNDERSTANDS".

For two dollars, the investigator secured a ticket to the performances, and he viewed both films from about noon to approximately 3:20 p.m. Each film ran approximately 70 minutes. At 4:00 p.m. the investigator commenced the preparation of an affidavit testifying to the facts and circumstances of what he had seen. Thereafter, he consulted with a deputy district attorney. He concluded his statement with a request for a search warrant for the seizure of the two films, lest they be removed from the jurisdiction by transference.

The investigator then appeared before a justice of the peace in Las Vegas, who scrutinized the "AFFIDAVIT IN SUPPORT OF AND PETITION FOR SEARCH WARRANT." After careful study and scrutiny of the affidavit, the justice of the peace issued a search warrant. The films were seized, and Glass was charged with two violations of NRS 201.250 and released on his own recognizance.

On January 13, 1970, Glass sought a motion to dismiss both complaints, alleging violation of his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution because he had not been afforded a prior adversary hearing on the issue of whether the films were obscene. The motion to dismiss was granted by a justice of the peace.[1] The State then appealed to the district court, noting that the Nevada statute under which Glass was charged did not provide for nor require a prior adversary hearing in obscenity cases.[2]

[1] He was not the magistrate who issued the search warrant.

[2] NRS 201.250:

"1.   In this section, unless the context otherwise requires:

"(a) 'Item' includes any book, leaflet, pamphlet, magazine, booklet, picture, drawing, photograph, film, negative, slide, motion picture,

Glass was charged under subsection 2 of NRS 201.250, *supra,* for wrongfully exhibiting the allegedly obscene movies, a mis-

---

figure, object, article, novelty device, recording, transcription or other similar items.

"(b) 'Obscene' means that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewdness going substantially beyond customary limits of candor in description or representation of such matters.

"2. A person is guilty of a misdemeanor who knowingly:

"(a) Prints, copies, manufactures, prepares, produces or reproduces any obscene item for purposes of sale or commercial distribution.

"(b) Publishes, sells, rents, transports in intrastate commerce, or commercially distributes or exhibits any obscene item, or offers to do any such things.

"(c) Has in his possession with intent to sell, rent, transport or commercially distribute any obscene item.

"3. No person, firm, association or corporation shall, as a condition to any sale, allocation, consignment or delivery for resale of any paper, magazine, book, periodical or publication require that the purchaser or consignee receive for resale any other item, article, book or other publication which is obscene. No person, firm, association or corporation shall deny or threaten to deny any franchise or impose or threaten to impose any penalty, financial or otherwise, by reason of the failure or refusal of any person to accept such items, articles, books or publications, or by reason of the return thereof. A person, firm, association or corporation who violates any provision of this subsection is guilty of a misdemeanor.

"4. (a) The district court has jurisdiction to enjoin the sale or distribution of obscene prints and articles, as described in paragraph (b).

"(b) The district attorney of any county or the city attorney of any city in which a person, firm, association or corporation publishes, sells or distributes or is about to sell or distribute or has in his possession with intent to sell or distribute or is about to acquire possession with intent to sell or distribute any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure, image or any written or printed matter of an obscene character, or which contains an article or instrument of obscene use or purports to be for an obscene use or purpose, or in any other respect defined in subsection 1, may maintain an action on behalf of such county or city for an injunction against such person, firm, association or corporation in the district court to prevent the sale or further sale or the distribution or further distribution of [sic] the acquisition, publication or possession within the state of any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photographed figure or image or any written or printed matter of an obscene character, described in this subsection or in subsection 1.

"(c) The person, firm, association or corporation sought to be enjoined shall be entitled to a trial of the issues within 10 days after joinder of issue and a decision shall be rendered by the court within 10 days of the conclusion of the trial.

"(d) If a final order or judgment of injunction is entered against the person, firm, association or corporation sought to be enjoined, such final order of [sic] judgment shall contain a provision directing the

demeanor.[3] The district judge agreed with the State's position, and he remanded the case to the justice court for trial. The district judge, in an able and well reasoned opinion, made it clear that prior to seizure there must be a judicial determination of obscenity based on facts and not on the conclusory determination of a police officer. The court below was satisfied that the 15-page factual recital under oath and the study thereof by the magistrate prior to the determination of obscenity constituted such an appropriate judicial determination. The district judge observed that it would be a practical impossibility for the magistrate to view the films in private and that it would demean the dignity of the court to require him to go to the theater for this purpose. The district judge also discerningly observed that the Supreme Court of the United States has not laid down a rule of procedure for all state courts requiring an adversary hearing to determine obscenity prior to seizure. I agree. Obscenity in whatever form is wholly unprotected by the free speech guaranty of the First Amendment. Roth v. United States, 354 U.S. 476 (1957). The courts will not hesitate to enforce any valid law against obscenity. Jacobellis v. Ohio, 378 U.S. 184 (1964).

In Stanley v. Georgia, 394 U.S. 557, 568 (1969), the High Court, holding it unconstitutional to make private possession of obscene material a crime, went on to say: "Roth and the cases following that decision are not impaired by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." If this

person, firm, association or corporation to surrender to the sheriff of the county in which the action was brought any of the matter described in paragraph (b), and such sheriff shall be directed to seize and destroy such obscene prints and article.

"(e) In any action brought as provided in this subsection, such district attorney or city attorney bringing the action shall not be required to file any undertaking before the issuance of an injunction order provided for in paragraph (c).

"(f) The sheriff directed to seize and destroy such obscene prints and articles shall not be liable for damages sustained by reason of the injunction order in cases where judgment is rendered in favor of the person, firm, association or corporation sought to be enjoined.

"(g) Every person, firm, association or corporation who sells, distributes, or acquires possession with intent to sell or distribute any of the matter described in paragraph (b), after the service upon him of a summons and complaint in an action brought pursuant to this subsection[,] is chargeable with knowledge of the contents of such matter."

[3]No attempt was made by the district attorney to enjoin Glass under the provisions of subsection 4 of NRS 201.250, and that section of the chapter is not relevant to the issues in this case.

be true, the Constitution does not deny the State the power to arrest a person on a charge of dealing in pornography that appeals only to pruriency, affronts all community standards, and completely lacks social worth without first haling that person into court to caution him that what he is doing is unlawful. The impracticalities of such a mandate are manifest. It is no longer an acceptable proposition in tort law that a dog is entitled to one free bite.[4] There should be no rule in criminal law, even by virtue of the protection accorded to freedom of speech, that every peddler of pornography is entitled to one free display of scatology. Such a procedure is unprecedented in criminal law and is incapable of effective enforcement. No prosecution could be commenced under such a constitutional mandate unless the State first held a separate adversary proceeding against every dealer in or exhibitor of pornography for each item of pornography that he might choose to sell or display at that time. Even though a court might have decided that one person was violating the obscenity law by dealing in pornography, an offender on the next street could not be prosecuted until he also had been afforded a prior adversary hearing concerning the same pornographic item. Were the existence of any touch of prior restraint the tincture by which conduct is stained unconstitutional, then presumably the existence of the requirement of a prior adversary hearing would color unlawful all arrests for "[a]ny person who willfully makes a telephone call without disclosing his true identity and addresses any obscene language, representation or suggestion to or about any person receiving such call,"[5] or "who knowingly causes to be performed or exhibited, or engages in the performance or exhibition of, any obscene, indecent or immoral show, act or performance,"[6] or "who knowingly . . . [e]xhibits for sale, sells or loans for monetary consideration to a minor any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct or sadomasochistic abuse and is harmful to minors."[7]

And it would mar the arrest, absent a prior adversary hearing, of one knowingly using the mails to transmit "[e]very

---

[4]See W. Prosser, Law of Torts 516 (3d ed. 1964).

[5]See NRS 201.255.

[6]See NRS 201.253.

[7]See NRS 201.265.

obscene, lewd, lascivious, indecent, filthy or vile article,"[8] as well as for transgressing the law that makes it a crime to mail matter containing "upon the envelope or outside cover . . . any delineations, . . . or language of an indecent, lewd, lascivious, or obscene character".[9]

Such a requirement would apparently dye entirely unconstitutional that which makes it a crime to utter "any obscene, indecent, or profane language by means of radio communication,"[10] because there would be no way to have a prior adversary hearing with respect to such utterances unless all radio communications were required to be previously transcribed.

In the instant case, the district judge in his opinion found that the investigator's affidavit was such as to enable the magistrate to focus searchingly on the question of obscenity by inquiry into the factual basis for the investigator's conclusion that the films were obscene. I also have made a careful study of the detailed affidavit presented to the magistrate. There is a factual description of some 30 different acts of genital-to-genital and oral-to-genital intercourse between man and woman, woman and woman, without theme or plot, in one film; and in the other film, some 10 situations involving genital-to-genital intercourse, another 10 involving female-to-female sexual relationships, and numerous instances of a woman whipping a man to satisfy sexual desires. There is an abundance of factual evidence of nudity and disrobing.

In my opinion the magistrate, after the aforementioned study, could come to no reasonable hypothesis other than that the films were obscene by contemporary community and national standards and that the search warrant should issue. No amount of argument by way of adversary hearing could provide any other hypothesis. I find nothing other than a total and utter lack of redeeming social value. The facts are not only patently offensive—they are loathsomely repulsive and detestably disgusting. The dominant appeal of the films, taken as a whole, is to a prurient interest.

No more than Mr. Justice Potter Stewart may one attempt to define hard-core pornography. Jacobellis v. Ohio, *supra.* One knows it when he sees it. The motion pictures involved in this case are just that.

---

[8]See 18 U.S.C. § 1461.

[9]See 18 U.S.C. § 1463.

[10]See 18 U.S.C. § 1464.

On April 26, 1971, the United States Supreme Court (Justices Black and Douglas dissenting) denied certiorari in Gornto v. Georgia, 402 U.S. 933, a case which held that a prior adversary hearing was not necessary for an obscenity determination concerning material that the police had purchased. The Georgia Supreme Court decision [Gornto v. State, 178 S.E.2d 894 (Ga. 1970)] is summarized as follows in 9 CrL 4020 (4–28–71):

"OBSCENITY—Magazine entitled 'Whiplash Lovers', whose contents consisted solely of nudity and illicit and perverted sexual activity, is obscene; state obscenity statute is constitutional, and the obscenity of the magazine was properly determined by local community standards; the right to privately possess obscene materials does not necessarily imply the right to distribute such materials; no prior adversary hearing is necessary for obscenity determinations concerning material that police have purchased."

I find that case in rather close analogy with the case before us. The investigator here paid two dollars for admission to the theater, watched and heard the motion pictures and their accompanying sound tracks, and immediately recited factually the scenes therein as well as the sounds. Without delay, he consulted counsel and, again without delay, swore to the truth of his statements. A 15-page, contemporaneous, sworn factual statement, taking into consideration the expense and difficulty of buying a film, should provide the careful regard owed to the consideration of freedom of speech.

I have also considered the case of Ledesma v. Perez, 304 F. Supp. 662 (1969), relied upon by Glass, where a three-judge federal court ruled that the arrests and the seizure of allegedly obscene materials were invalid for lack of a prior adversary hearing on the character of the seized materials. On February 23, 1971, the United States Supreme Court reversed (401 U.S. 82, 84, 91 S.Ct. 674, 676), on the ground of an unwarranted interference by the federal courts in the state powers. Mr. Justice Black, speaking for the court, said:

"It is difficult to imagine a more disruptive interference with the operation of the state criminal process short of an injunction against all state proceedings. . . . The propriety of arrests and the admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by state tribunals, see Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), . . . We therefore hold that the three-judge court improperly intruded into the State's own criminal process and reverse its orders suppressing evidence in the pending state prosecution and directing the return of all seized materials."

Petitioner Glass has relied heavily on the ruling of the United States Court of Appeals in Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970), where the majority of the court held that a prior adversary hearing would be required before the state (California) would be permitted to seize any further movie films. On March 29, 1971, the United States Supreme Court granted certiorari in Demich (401 U.S. 990), vacating the judgment, and remanded the case to the United States Court of Appeals for the Ninth Circuit for reconsideration in light of Perez v. Ledesma, *supra.*

I would prefer to follow the rule of our sister state of California recently announced in Monica Theater v. Municipal Court, 88 Cal.Rptr. 71, 81 (Cal.App. June 23, 1970, *as modified on denial of rehearing,* July 8, 1970, *hearing denied by Supreme Court of California,* Sept. 11, 1970), where the court said:

"An even later decision, Demich, Inc. et al., v. Ferdon et al., 426 F.2d 643, decided by the United States Court of Appeals for the Ninth Circuit on May 13, 1970, follows these preceding federal counterparts [Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969), *cert. denied,* 396 U.S. 985 (1969), Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), *cert. denied,* 397 U.S. 920 (1970); 208 Cinema, Inc. v. Vergari, an unreported Second Circuit opinion, reversing a District Court opinion reported in 298 F.Supp. 1175 (S.D.N.Y. 1969)] in dealing with a film seizure case arising in California. (See also Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968).) However, the opinion makes no reference to the California statutory scheme for prompt judicial review of a previously issued search warrant (§ 1538.5). Thus, we find it not controlling (cf. People v. Willard, 238 Cal.App.2d 292, 305, 47 Cal.Rptr. 734 [1965]). Moreover, we agree fundamentally with the dissenting opinion therein. . . ."

In Monica, the California court stressed, 88 Cal.Rptr. at 81:

"California's section 1538.5 hearing is a procedural vehicle which allows for a very prompt adversary proceeding, and is one which 'the censor' knows calls for him 'to go to court.' (See Freedman v. Maryland, *supra* (1965) 380 U.S. 51, 59, . . .)"

A similar remedy is available to petitioner Glass under Nevada law. See NRS 179.085.[11] Our statute, like California's,

---

[11]NRS 179.085:

"1. A person aggrieved by an unlawful search and seizure may move the court having jurisdiction where the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that:

permits one who has been aggrieved by an improper seizure of his property, to move the court for return of the property on the ground that the warrant was illegally issued, thus affording the petitioner a prompt adversary hearing. This remedy was and is available to Glass in the instant case. This, in my opinion, affords sufficient opportunity to any person who wishes to do so to challenge the legality of a seizure. It is the accepted practice in California, and I can find no authority from the High Court that questions its validity.[12]

Since the first decision on obscenity of the United States Supreme Court in 1957, the appeals and collateral actions based on local efforts to punish or restrain the peddling of the lewd, lascivious, and obscene have proliferated until volumes could be filled with citations alone.

This court should, in my opinion, take judicial notice of the national clamor over the delay in disposing of criminal cases. Due process can be had without piling one adversary hearing upon another. This case is another demonstration of the fact that the criminal process could be simplified and expedited without loss of constitutional rights.

I would deny the writ of certiorari, and I would remand the case for disposition in accordance with the order of the district judge of the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, issued on the third day of June, 1970.

BATJER, J., concurring in part and dissenting in part:

I agree with that part of the majority opinion holding that

"(a) The property was illegally seized without warrant; or

"(b) The warrant is insufficient on its face; or

"(c) There was not probable cause for believing the existence of the grounds on which the warrant was issued; or

"(d) The warrant was illegally executed.
The judge shall receive evidence on any issue of fact necessary to the decision of the motion.

"2.  If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible evidence at any hearing or trial.

"3.  The motion to suppress evidence may also be made in the court where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

[12]The impracticalities resulting from the rule emanating from the majority's opinion requiring a *prior* adversary hearing are manifest: Without the film, who is to testify regarding its character? May not the film be "edited", or even destroyed, by the operator at any time before seizure?

the petition for certiorari be dismissed and that the order of the district court to remand the case to the justice's court for trial be allowed to stand. I respectfully dissent from the holding of the majority that: "We regard it as settled that the First and Fourteenth Amendments require that there be an adversary judicial hearing and determination of obscenity before a warrant may be issued to search and seize the single copies of allegedly obscene films."

I agree with the district court judge when he reasoned that prior to a seizure of this nature there must be a judicial determination of obscenity based on facts and not the conclusive determination of a law enforcement officer and then found that the investigator's affidavit was sufficiently factual to enable the magistrate to focus searchingly on the question of obscenity before issuing the search warrant. Compliance with the Fourth Amendment[1] prohibitions against unreasonable searches and seizures together with the added precautions that the viewing officer's affidavit must contain factual information and not his conclusions, and that it be carefully considered by a magistrate before the search warrant issues, affords everyone adequate protection.

There is a wide spread contention that property rights can be adequately safeguarded only if there is a prior adversary hearing, for without such a hearing the owner's property could be detained for an extended period of time and he would suffer a financial loss. That thinking loses sight of the altruistic purpose of the First Amendment that the public has the right to receive non-obscene material, and places the question squarely within the Fourth Amendment protection against deprivation of property without due process of law.

I further agree with the conclusion of the district court judge when he determined that the United States Supreme Court had not laid down a rule of procedure for all state courts requiring an adversary hearing to determine obscenity prior to seizure.

The majority relies on A Quantity of Books v. Kansas, 378 U.S. 205 (1964); Lee Art Theatre v. Virginia, 392 U.S. 636 (1968); Marcus v. Search Warrant, 367 U.S. 717 (1961); Demich, Inc. v. Ferdon, 426 F.2d 643 (9 Cir. 1970); reversed on other grounds; Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3 Cir. 1969); Bethview Amusement Corp. v. Cahn, 416

[1]United States Constitution, Amend. IV: "Unreasonable searches and seizures. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

F.2d 410 (2 Cir. 1969); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4 Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7 Cir. 1968), for support of its position that an adversary hearing must be conducted prior to seizure.

The decision of A Quantity of Books v. Kansas, supra, can be read to stand for the proposition that an adversary hearing must be held as a prerequisite to a seizure of allegedly obscene material, however, Justice Brennan was not speaking for a majority of the High Court. Moreover, it is not apparent whether the decision may have been strictly limited as to its facts. I do not feel constrained to follow it. See Gornto v. State, 178 S.E.2d 894 (Ga. 1970); Mitchum v. State, 244 So.2d 159 (Fla. 1971).

In United States v. Wild, 422 F.2d 34 (2nd Cir. 1969), that court said: "These cases [Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961)], are inapposite since they involved massive seizures of books under state statutes which authorized warrants for the seizure of obscene materials as a first step in civil proceedings seeking their destruction. The seizures in this case were of instrumentalities and evidence of the crime for which appellants were indicted and lawfully arrested. We do not believe Marcus and Quantity of Books can be read to proscribe the application of the ordinary methods of initiating criminal prosecution to obscenity cases." Cf. Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y. 1969), affirmed 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970), where it was held that an adversary hearing is not a prerequisite to the validity of an arrest for obscenity. Here, on theory, Erwin Glass could have been arrested without a prior adversary hearing, locked up, and prevented from exhibiting to the public his non-obscene materials, but following the majority opinion his two films " 'Wanda', the hypnotist, lashed into submission, for mature adults only," and " 'Title Withheld', only for the mature adult who understands," must be granted an adversary hearing before they can be held.

The majority also relies upon Lee Art Theatre v. Virginia, supra, and Marcus v. Search Warrant, supra, to support its position that a prior adversary hearing is required. *Marcus* involved the seizure of 11,000 copies of 280 different publications. The High Court reversed the lower court's denial of the petitioner's motion to suppress and ordered the seized material returned to the owner on the ground that the search warrants were too general and that the conclusive determination by the

officers that the material was obscene and the failure of the magistrate to examine the alleged obscene material before issuing the warrant *constituted a denial of due process and a violation of the Fourth Amendment.* Although the High Court discussed the question of whether a prior adversary hearing was necessary it did not decide that issue. In Lee Art Theatre, Inc. v. Virginia, supra, two films were seized from the petitioner's theatre, upon the basis of an ex parte warrant based upon an officer's affidavit, *stating only the titles of the films and that he had determined them to be obscene.* The High Court held this procedure to be erroneous, as the issuance of the warrant without the justice of the peace's inquiry into the factual basis for the officer's conclusions fell short of constitutional requirements demanding necessary sensitivity to freedom of expression. That court's opinion is silent on the issue of whether a prior adversary hearing is necessary.

Justice Mowbray pointed out in his dissent that NRS 179.-085, affords the petitioner an ample safeguard if his property has been improperly seized. Pursuant to that statute he may move for return of the property on the ground that the search warrant was improvidently issued. Monica Theater v. Municipal Court for Beverly Hills J. D., 88 Cal.Rptr. 71 (Cal.App. 1970).

I believe that we should simply hold that an adversary hearing is not required, dismiss the petition for certiorari, and affirm the order of the district court.